Elmer Dwayne
**BLANKENSHIP, Appellant,**
v.
**The STATE of Texas, Appellee.**
**No. 964–86.**
Court of Criminal Appeals of Texas,
En Banc.
Dec. 28, 1988.
On Rehearing Nov. 15, 1989.

---

ment of Corrections, and the conviction was affirmed by the Court of Appeals in a published opinion. *Blankenship v. State,* 715 S.W.2d 132 (Tex.App.—Texarkana 1986). On appeal, appellant complained that the evidence was insufficient to support his conviction because the State failed to prove the burglarized premises was a "habitation" as defined by V.T.C.A., Penal Code § 30.01(1). We granted appellant's petition for discretionary review because we believe the opinion below is arguably in conflict with *Jones v. State,* 532 S.W.2d 596 (Tex.Cr.App.1976), and *Moss v. State,* 574 S.W.2d 542 (Tex.Cr.App.1978). Tex.R.App. Pro. Rule 200(c)(3).

I.

On the evening of August 19, 1984, the complainant, W.J. Weeks was relaxing at his home in Leesburg, Camp County. At about 9:00 p.m., his son, Perry, came home and informed his father that a blue van with open doors was parked in front of the rent house Weeks owned. After telling Perry to go and get the license number of the strange van, Weeks called the sheriff and then went over to the rent house, which was about three hundred yards from his home. There, he saw that a window had been smashed and the air conditioner unit which had been there was gone. There was a second air conditioner lying on the steps of the house.

Perry, meanwhile, had gotten in his truck and arrived at the rent house just in time to see the van speed away. After getting the license plate number, Perry followed the van down highway eleven and into Hall's Wrecking Yard. There he and the driver "hollered" at each other. The van pulled away and Perry continued to chase it down the highway until it was stopped by the police.

At trial, it was established that appellant had taken an air conditioner, a lawn chair and a gasoline can from the rent house owned by Weeks. At the time the offense was committed, the house was being used by Weeks to store various items of property. It had not been rented for two years, and the utilities were not connected. The house was wired for electricity, but had no meter, and the water was turned off at its meter in the backyard. The issue, therefore, is whether there is sufficient evidence to show the structure burglarized by appellant was a "habitation" as that term is defined by statute.

Michael Lantrip, Pittsburg, for appellant.

Charles M. Cobb, Dist. Atty. and Charles C. Bailey, Asst. Dist. Atty., Mt. Pleasant, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant was convicted of burglary of a habitation pursuant to V.T.C.A., Penal Code § 30.02. The jury assessed punishment at eight years in the Texas Depart-

## II.

Burglary is either a first or second degree felony. Because punishment turns on whether the premises are a building or a habitation, the definition of "habitation" is critical.[1] "Habitation" and "building" are defined in § 30.01, supra, as follows:

(1) "Habitation" means a structure or vehicle that is adapted for the overnight accommodation of persons, and includes:

(A) each separately secured or occupied portion of the structure or vehicle; and

(B) each structure appurtenant to or connected with the structure or vehicle.

(2) "Building" means any enclosed structure intended for use or occupation as a habitation or for some purpose of trade, manufacture, ornament, or use.

In *Jones v. State*, supra, the issue decided was sufficiency of evidence to support an implied finding by the trial court that the structure involved was a habitation. 532 S.W.2d, at 597. But the Court did not hesitate to reject that finding in that *the evidence did not square with its holding on the law, viz:*

"... We hold that the structure ... must at the time of the alleged offense have been actually 'adapted for the overnight accommodation of persons' or at least at some prior time used for the overnight accommodation of persons and still be 'adapted for the overnight accommodation of persons.'"

*Id.,* at 600.

The court of appeals did indeed conclude that "the jury had ample evidence from which to conclude that the rent house was a habitation." Contrary to *Jones* however, it believed, *as a matter of law,* that whether a structure is a habitation should not depend on "how much or what kind of furniture a building contains, or by whether the utilities are connected," because:

"... A finished structure designed for, built as, and *intended* as a place for people to live is logically a habitation. *Cf.* Black's Law Dictionary 640 (5th ed. 1979) (defining habitation as a place of abode, dwelling place, or residence)."

1. See G. Reamey, CRIMINAL OFFENSES AND DEFENSES IN TEXAS 40–42 (1987).

2. All emphasis is mine throughout unless otherwise noted.

3. When he comes to the part of *Blankenship* that resorts to Black's Law Dictionary for a definition of "habitation," see *ante,* at 200, Chief Justice Nye cogently counters:

*Blankenship,* supra at 133.[2] We will now review that reason in law given for decision against the supporting reasoning of this Court in *Jones, viz:*

"... Thus, if the definition of a 'building' as a structure *intended* for use or occupation as a habitation' can have any meaning, then 'habitation' cannot be construed as meaning a structure or vehicle *intended* to be used as a residence or a dwelling."

*Id.,* at 600.

*Blankenship v. State,* supra, was criticized in *Chandler v. State,* 743 S.W.2d 736 (Tex.App.—Corpus Christi 1987) PDR filed and pending, the only appellate court which seems to have considered it. Therein the leading opinion by Justice Dorsey pointed out that "the logic of *Blankenship* appears to conflict with the requirement in *Jones* that the premises actually be adapted, and still be adapted, for the overnight accommodation of persons," in that the *Blankenship* court "focuse[d] more on the subjective character of the premises than on the objective features showing adaption." *Id.,* at 738. The opinion found it "inconceivable that a reasonable person would find an unfurnished apartment fit for *overnight* accommodation." Accordingly, it concluded:

"... While the apartment in the present case may have been *intended* for overnight accommodation, and may have been so used in the past, at the time appellant entered the apartment it was not *actually so adapted.*"

*Id.,* at 739. See also Nye, C.J., concurring, at 742 ff.[3]

In our judgment, Justice Dorsey has found the key to open a door to understanding the definitive feature of "habitation" as defined in the statute. That is, the structure must have been adapted for and at the time of the offense be fit for accommodation *"overnight."*

*Hargett v. State,* 534 S.W.2d 909 (Tex.Cr. App.1976), was delivered *sans* dissent some sixty days after the unanimous opinion in *Jones,* supra. Writing for the Court, Commissioner Green accurately summarized

"... While this reasoning is logical, it refers to the common dictionary meaning of the term habitation and *fails to deal with the statutory definition of habitation,* and the complexities wrought by the statute and case law."

*Id.,* at 744.

the facts and conclusions of law in *Jones,* and then considered in juxtaposition the facts in *Hargett. Id.,* at 910–911.[4] The first factual matter he pointed to is (unlike the house in *Jones* ): "It had been rented *complete with furniture* so that it *certainly* was adapted for *overnight* accommodation." *Id.,* at 911. (Indeed, it was furniture, including a "walnut bedroom dresser" and "parts of a bed," *Id.,* at 910, that was taken in the burglary.) Also (unlike the house in *Jones* ), the residence in *Hargett* was not "a new one," but one that the landlord "rented periodically," and believed his new tenant "had moved some things into the house." *Ibid.*[5]

In this Court, therefore, every decision since *Jones* has recognized, acknowledged, understood and applied the formulation in *Jones.* The *Blankenship* opinion below does not even identify, much more discuss, the teaching of *Jones;* instead it is content merely to compare and contrast facts of prior decisions and, without noticing that in each one the Court came to its conclusion only after testing the facts against the *Jones* standard, to adapt a common dictionary definition as its own test for what is "logically a habitation." *Blankenship,* supra, at 133.

### III.

The court below purports to follow the "approach" that simply defers to the jury's finding, in plain disregard of the authoritative construction of the statute in *Jones,* and in favor of its own view of what the construction ought to be. But *Jones* and its followings make abundantly clear that the evidentiary matters selected by the court of appeals in support of the trial court's verdict are without significance.

4. *Hargett* made no attempt to distinguish the holding in *Jones* that the structure "must have been 'actually adapted ...' and still 'adapted for the overnight accommodation of persons.'" *Jones v. State,* supra, at 600. What Commissioner Green demonstrated is that whereas the *facts* in *Jones* failed legal tests *Jones* laid down to determine whether a structure is a habitation, the *facts* in *Hargett* fully met the tests. Thus the Court was *following* and *applying* the law of *Jones.* In *Moss v. State,* 574 S.W.2d 542 (Tex.Cr. App.1978), the Court engaged in a similar exercise, beginning with a reiteration of *Jones* tests, then comparing facts of *Jones* with those of *Hargett* and finally deciding the facts of *Moss* "are more similar to *Jones* than *Hargett.*" *Id.,* at

Thus, that Weeks had once lived in the house until 1977, and that it had last been rented for "something over two years [ago]," tells us nothing about its "overnight accommodation" in 1984. A house with "two bedrooms"—but no beds—is hardly fit to accommodate persons overnight. That it is "wired for electricity" will not provide electrical energy for lights and other appliances such as an air conditioner until a meter is installed. Having water available by turning on the main at a water meter outside may be handy in daytime, but not overnight—unless coming out faucets and taps inside, the water is visible in the dark.

Finally, the record facts of the matter are, in the words of the owner when asked by the State, "[w]hat kind of property" he had "inside the house," *viz:*

"Well, I had a—quite a few things, just general line items, a few garden tools and stuff. My daughter and her husband were having problems and stored some of their equipment and stuff in there. I had two window air conditioners."

One air conditioner was taken in the burglary, along with such elegant residential furnishings as a lawn chair and a gasoline container. The owner never hinted that the "stuff" in rooms of the structure was there for any purpose other than storage. A "window air conditioner" stored away is not likely to provide "comfort of persons," particularly when there is no "live" wire to which it can be connected.

544–545. Neither *Hargett* nor *Moss* deviated from the *Jones* tests.

5. In *Hargett v. State,* supra, after the burglary the landlord, Len E. Clark, asked his tenant, John Poland, if the latter "had anything missing," and *"Poland's* answer was struck from the record[.]" 534 S.W.2d at 911. It is clear enough to this writer, however, that what was stricken, probably on hearsay grounds, was Clark's answer relating what Poland told him about items of Poland's own property "missing" after the burglary, thereby tending to show Poland, the tenant, had actually occupied the habitation.

Therefore, we hold the evidence is insufficient to establish that the premises was a "habitation" as defined in *Jones* and its progeny. The facts here are similar to those in *Jones*, supra, because the house involved, although it had been rented in the past, was not "still 'adapted for the overnight accommodation of persons.'" *Moss v. State*, supra at 545, citing *Jones v. State*, supra. While the evidence may be sufficient to sustain a conviction for burglary of a building, a lesser included offense of burglary of a habitation, and a second degree felony, we are not authorized to determine punishment for that offense. *Moss v. State*, supra at 545 (Opinion on Appellant's Motion for Rehearing). Therefore, we are constrained to order an acquittal. We express no opinion at this time as to whether appellant may be retried for any lesser included offense. *Garrett v. State*, 749 S.W.2d 784, 804 (Tex.Cr.App.1986) (Opinion on State's Motion for Rehearing).

The judgments of the court of appeals and of the trial court are reversed and the cause is remanded to the trial court for entry of a judgment of acquittal.

CAMPBELL, J., dissents.

McCORMICK, Judge, dissenting.

Today, the majority overturns appellant's conviction but not before it (1) redefines the Penal Code definition of "habitation" and (2) acts as a thirteenth juror to reevaluate the evidence presented at appellant's trial.

## I. REDEFINING "HABITATION"

The evidence established that appellant, Elmer Dwayne Blankenship, burglarized a structure at which time he took an air conditioning unit, a lawn chair and a gasoline container. This was uncontested. Appellant, however, did contest in the Court of Appeals that the structure he burglarized was a "habitation" as that term is defined in V.T.C.A., Penal Code, Section 30.01(1). See *Blankenship v.*

State, 715 S.W.2d 132 (Tex.App.—Texarkana 1986).

Burglary of a habitation is a first degree felony, while burglary of a building is a second degree felony. V.T.C.A., Penal Code, Section 30.02. "Habitation" and "building" are defined in Section 30.01, supra:

"(1) 'Habitation' means a structure or vehicle that is adapted for the overnight accommodation of persons, and includes:

"(A) each separately secured or occupied portion of the structure or vehicle; and

"(B) each structure appurtenant to or connected with the structure or vehicle.

"(2) 'Building' means any enclosed structure intended for use or occupation as a habitation or for some purpose of trade, manufacture, ornament, or use."

In *Jones v. State*, 532 S.W.2d 596 (Tex. Cr.App.1976), this Court set forth a test to be applied in determining whether a structure is a habitation. Uncontent with the Penal Code definition of "habitation" this Court added to the Code's definition "that the structure or vehicle must *at the time of the alleged offense have been actually* 'adapted for the overnight accommodation of persons' *or at least at some prior time used for the overnight accommodation of persons and still* 'adapted for the overnight accommodation of persons.'" 532 S.W.2d at 600. (emphasis added).

The *Jones* Court rationalized this interpretation of the statute with two theories: First, the Court stated that the traditional purpose for holding that a burglar of a habitation should receive a higher penalty than a burglar of a building is to protect private homes. Therefore, the definition of the term "adapted" should be construed in a manner consistent with this policy. Rejecting the traditional, general definition of the term "adapted" ("capable of use" or "made suitable")[1] as too broad, the *Jones* Court concluded that "the legislature [did not] intended ... to make a 'habitation' out

1. See *Black's Law Dictionary*, p. 34 (5th Ed. 1979). See also *Random House Dictionary of* *the English Language*, p. 16 (1967); *Balintine's Law Dictionary*, p. 26 (3rd Ed.1969).

of every structure or vehicle that could be converted in the future into overnight accommodation of persons or was 'capable of use as such.'" 532 S.W.2d at 600.

Second, the *Jones* Court attempted to harmonize the definition of "habitation" with the definition of the term "building." The Court reasoned that since the definition of "building" was a structure *intended* for use as a "habitation," then naturally "habitation" could not have the same meaning. Therefore, a habitation had to be something more than just a place capable of being used as an overnight accommodation or intended to be used as an overnight accommodation.

Thereafter, in *Moss v. State*, 574 S.W.2d 542 (Tex.Cr.App.1978), the *Jones'* definition of habitation was perpetuated. We had to emphasize, however, that the structure in question (a house) "was not *still* adapted for the overnight accommodations of persons." 574 S.W.2d at 545 (emphasis in the original).[2]

Our interpretation of "habitation" did not work in *Hargett v. State*, 534 S.W.2d 909 (Tex.Cr.App.1976). The property involved was a house which the landlord had rented but which the new tenants had not yet occupied. We stated:

"In the instant case, we conclude that the testimony of the owner Clark is sufficient to prove that the house was a habitation when burglarized. It has been rented complete with furniture so that it

certainly was adapted for the overnight accommodation of persons. The record is silent as to any utilities. This house was not shown to be a new one which had never been lived in, but one of several houses which Clark 'rented periodically.' Clark thought that the tenant Poland had moved some things into the house and after the burglary asked him if 'he had anything missing.' Poland's [This probably should be Clark's] answer was struck from the record on appellant's objection.

"The evidence is sufficient to sustain the conviction." 534 S.W.2d at 911. (Emphasis added).

*Jones* was cited in *Hargett* but no attempts were made to distinguish the *Jones'* holding that the structure in question must have been "actually adapted and still adapted" as a habitation.

Some of the Courts of Appeals have resolved cases based upon whether the facts presented were more akin to *Jones* or to *Hargett*. The results have not been uniform. Compare *Bazroux v. State*, 634 S.W.2d 919 (Tex.App.—Houston [1st Dist.] 1982, no pet.); *Lewis v. State*, 631 S.W.2d 813 (Tex.App.—Fort Worth 1982, no pet.); *Trotter v. State*, 623 S.W.2d 504 (Tex.App. —Fort Worth 1981, no pet.) (following *Hargett*), with *Chandler v. State*, 743 S.W.2d 736 (Tex.App.—Corpus Christi 1987, no pet.) (following *Jones*, criticizing *Blankenship*).[3]

**2.** The majority now emphasizes the word "overnight," writing that "the structure must have been adapted for and at the time of the offense be fit for accommodation *"overnight.*" Opinion p. 200. The *Jones'* term "still," emphasized in *Moss*, is not even found in the Penal Code's definition of "habitation." With each successive case the Court strays further from the Code's original definition.

**3.** In *Lewis*, the property was a large one-bedroom apartment. While the opinion contains no other facts about the apartment, the stolen property included a portable radio, a television set, microwave oven, and jacket. The Court found sufficient evidence to conclude the structure was a habitation.

In *Bazroux*, the owner of the house was temporarily out of the country on a twenty-eight day business tour, the kitchen was completely equipped, and the house contained furnish-

ings. The electricity was operating. The Court stated, "Nothing in the record indicates that the premises was in a condition other than one of suitability for the owner's *resumption of normal life upon his return* from the periodic travel required in his employment." 634 S.W.2d at 921. The conviction for burglary of a habitation was sustained. *Trotter* involved a mobile home which had furniture and household items with the utilities available, but the sewer line was disconnected. The Court of Appeals held this to be habitation although no one lived in the mobile home at the time of the offense. It had formerly been occupied.

In *Chandler*, the Court of Appeals noted that the logic in *Blankenship* appeared to conflict with the requirement in *Jones*, that the premises actually be adapted, and still be adapted, for the overnight accommodation of persons. *"Blankenship* focusses (sic) more on the sub-

The majority's holding, relying upon *Jones*, that "the structure must have been adopted for and at the time of the offense be fit for accommodation *overnight*," Opinion p. 200, improperly construes the statute. The inquiry should be whether a reasonable person would find that the *structure* was *adapted* for the overnight accommodation of persons. While belongings in the house could be a relevant consideration, the critical inquiry according to the statutory definition should concern the structure itself. Both the majority and *Jones* have misconstrued and incorrectly applied Section 30.01(1) of the Penal Code.

*Jones* should be overruled. Its holding that "if the definition of a 'building' as a structure intended for use or occupation as a habitation can have any meaning, a structure or vehicle intended to be used as a residence or a dwelling," is backwards with respect to legislative intent. Instead of limiting the definition of habitation by including "intended for use as a habitation" in the definition of building, it is for more likely that the Legislature wanted to avoid situations which might slip through the two definitions. For example, if the "intended for use as a habitation" language was not included in the definition of building, a burglary of a house which is being built, but not yet completed, would fit neither definition. It is unreasonable to conclude that giving meaning to the words "intended for use" would in any way limit the definition of a structure "adapted for use as a habitation."

I agree with the *Jones* perception that a burglary of a habitation should be more severely punished than a burglar of a building, but I cannot agree that the term "adapted" should be construed consistent *only* with this policy. Prevention of crime is as much a goal as punishment. V.T. C.A., Penal Code, Section 1.02(1)(A). As such, and as in this case, a burglar should

not be rewarded with an acquittal whenever the structure, which from all outward appearances is adapted for the overnight accommodations of persons, is presently uninhabited for reasons beyond the burglar's control. It is significant that courts in other jurisdictions with similarly worded statutes have not construed these statutes as the majority does. See *People v. Sheirod*, 124 A.D.2d 14, 510 N.Y.S.2d 945 (4th Dept. 1987); *State v. Albert*, 426 A.2d 1370 (Me.1981); *Hamilton v. State*, 354 So.2d 27 (Ala.Crim.App.1977). Indeed, we so construed the statute in the *Hargett* opinion.

Moreover, as long as the majority perpetuates a nonpenal code definition of habitation, this and other appellate courts will face similar convictions. When the jury deliberates it has before it the definition of "habitation" as found in the Penal Code. No one instructs them, and no one is authorized to instruct them, that "adapt" found in the Penal Code definition of habitation means anything but "capable of use."

## II. THE THIRTEENTH JUROR

There is a more serious problem with the majority's holding. After the majority redefines "habitation" it undertakes to review the evidence not in the light most favorable to the verdict but as a thirteenth juror who does not understand that a hovel is as much a home as a mansion. The majority writes:

"A house with 'two bedrooms'—but no beds—is hardly fit to accommodate persons overnight. That it is wired for electricity will not provide electrical energy for lights and other appliances such as an air conditioner until a meter is installed. Having water available by turning on the main at a water meter outside may be handy in daytime, but not overnight—unless coming out of faucets and taps inside, the water is visible in the dark." Slip opinion, p. 201.

---

jective character of the premises than on the objective features showing adaptation. *Jones, Moss* and *Hargett* all seem to focus on the actual ability of a person to inhabit the premises in the condition which the burglar found the premises. What the structure appeared to be from the outside is irrelevant." 743

S.W.2d at 738. The Corpus Christi court, therefore, held that "[w]hile the apartment in the present case may have been intended for overnight accommodation, and may have been so used in the past, at the time appellant entered the apartment it was not actually so adapted." Id. at 739.

In short, the majority members view the belongings of the house as inadequate for their comfort and proceed to find the evidence insufficient to support the jury's verdict.

The Court of Appeals, in this case, however, did not look merely at the contents of the structure when it deferred to the jury's finding. That court wrote:

"Since the jury here found the rent house to be a habitation, we look at the evidence in the light most favorable to this finding. [Citations omitted.] Our review of the evidence reveals that the rent house had bedrooms, a kitchen, and a living room, and that it was wired for electricity and had a water connection. Jay Weeks [the owner] testified that he had rented the house to tenants in the past and intended to do so in the future. He stated further, without objection, that the house was adapted for the overnight accommodation of persons.... [W]e conclude that the jury had ample evidence from which to conclude that the rent house was a habitation." *Blankenship*, 715 S.W.2d at 133.

The Court of Appeals is correct, the majority is not; whether a structure is or is not "adapted for the overnight accommodation of persons" is a question of fact to be resolved in the trial court by the trier of fact. See generally, *Torres v. State*, 585 S.W.2d 746 (Tex.Cr.App.1979); *Tuner v. State*, 28 S.W.2d 171 (Tex.Cr.App.1930); *Dowling v. State*, 317 S.W.2d 533 (Tex.Cr. App.1958).

Thus, the issue on appeal is whether there is sufficient evidence to support the jury's verdict. See *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In *Jackson*, the Supreme Court wrote:

"[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.... [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318–319, 99 S.Ct. at 2788–2789, 61 L.Ed.2d at 573–574 (citations and footnotes omitted; emphasis in the original).[4]

In this case, the trial court correctly instructed the jury, without objection, that " 'Habitation' means a structure or vehicle that is adapted for the overnight accomodation (sic) of persons." The jury was also instructed that "a 'building' is any enclosed structure intended for use or occupation as a habitation or for some purpose of trade, manufacture, ornament or use." Both of these instructions comport with those provided by the Penal Code in the section on burglary.

The jury found appellant guilty of burglary of a habitation. The evidence adduced at trial established that the structure: (1) was a house once lived in by the complainant, (2) is now rented from time to time, (3) has two bedrooms, and (4) is wired for electricity and has water readily available. Among the items stolen was an air conditioning unit (one of two in the house) which the jury could reasonably have assumed was for the comfort of persons who may have occupied in the past or will in the future occupy the house. Moreover, the owner of the house testified that the structure was adapted for the overnight accommodations of persons. This evidence is sufficient to support the jury's determination of guilt even if one uses the *Jones'* definition of habitation. It is clearly sufficient if one uses the Penal Code definition.

*Jones* should be overruled and the judgment of the Court of Appeals should be affirmed; because the majority does otherwise, I respectfully dissent.

W.C. DAVIS and WHITE, JJ, join in this dissent.

4. *Jackson,* the seminal case dealing with sufficiency of evidence, is not cited in the majority opinion probably because it does not fit into the majority's scheme to reevaluate evidence.

### OPINION ON STATE'S MOTION FOR REHEARING

WHITE, Judge.

Appeal is taken from a conviction of burglary of a habitation. V.T.C.A., Penal Code Sec. 30.02.[1] Punishment was assessed by the jury at eight years confinement.

On direct appeal to the Sixth Court of Appeals, appellant challenged the sufficiency of the evidence to prove that the burglarized premises were a "habitation" as defined in the Penal Code. See V.T.C.A., Penal Code Sec 30.01(1).[2] The Court of Appeals found the evidence sufficient to prove "habitation" and affirmed the conviction. *Blankenship v. State*, 715 S.W.2d 132 (Tex.App.—Texarkana 1986).

Appellant petitioned this Court for discretionary review challenging the Court of Appeals' review of the sufficiency of the evidence and alleging that the opinion below was in conflict with prior case law, particularly with the "habitation" standard promulgated by this Court in *Jones v. State*, 532 S.W.2d 596 (Tex.Cr.App.1976). Tex.R.App.Proc., Rule 200(c)(3). After review was granted, Judge Clinton, writing for the majority, reversed appellant's conviction based on *Jones*.

The State then filed a Motion for Rehearing arguing that *Jones* should be overruled because it applies the wrong standard in reviewing a sufficiency of the evidence question, and because the construction of "habitation" within *Jones* should be revised. We granted the State's motion, and we will now affirm the appellant's conviction.

The evidence established that Perry Weeks' rent house was broken into about 9:00 P.M. on August 19, 1984. This rent house was on the same tract of land as Weeks' residence, but about 300 yards separated the two houses. The rent house had not been lived in or leased for about two years at the time of the burglary, but the house was wired for electricity (although the power was off and there was no meter), and water service was available (although turned off at the back yard). The house contained some belongings, and was equipped with two window air conditioners. Weeks testified that the structure was "adapted for the overnight accommodation of persons."

The key issue before this Court is whether the evidence was sufficient to prove Weeks' house a "habitation" as that word is used in the burglary statute, V.T.C.A., Penal Code 30.02. Texas law divides burglary of realty into two categories: burglary of buildings and burglary of habitations. See V.T.C.A., Penal Code 30.02. The former burglary is a second degree felony (unless certain conditions are met) but the latter burglary is always a first degree felony. *Id.* at (c) and (d).

In reviewing the sufficiency of the evidence to establish whether the State has proved an element of the offense, we must look at all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have believed the element established

---

1. (a) A person commits an offense if, without the effective consent of the owner, he:

(1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony or theft; or

(2) remains concealed, with intent to commit a felony or theft, in a building or habitation; or

(3) enters a building or habitation and commits or attempts to commit a felony or theft.

. . . . .

(c) Except as provided in Subsection (d) of this section, an offense under this section is a felony of the second degree.

(d) An offense under this section is a felony of the first degree if:

(1) the premises are a habitation; or

(2) any party to the offense is armed with explosives or a deadly weapon; or

(3) any party to the offense injures or attempts to injure anyone in effecting entry or while in the building or in immediate flight from the building.

2. (1) "Habitation" means a structure or vehicle that is adapted for the overnight accommodation of persons, and includes:

(A) each separately secured or occupied portion of the structure or vehicle; and

(B) each structure appurtenant to or connected with the structure or vehicle.

beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We are not to sit as a thirteenth juror reweighing the evidence or deciding whether *we* believe the evidence established the element in contention beyond a reasonable doubt; rather, we are to ask ourselves whether the trier of fact, acting rationally, could have found the evidence sufficient to establish the element beyond a reasonable doubt. *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Cr.App. 1988). We do not presume that a jury acted reasonably just because they were properly instructed; we test the evidence to see if it is at least conclusive enough for a reasonable factfinder to believe based on the evidence that the element is established beyond a reasonable doubt. *Jackson,* 443 U.S. at 318, 99 S.Ct. at 2788, 61 L.Ed.2d at 573. See also *Butler v. State,* 769 S.W.2d 234 (Tex.Cr.App.1989).

In *Jones v. State,* 532 S.W.2d 596 (Tex. Cr.App.1976) and its progeny we undertook to determine whether a structure was proven a habitation without the benefit of the analysis set out in *Jackson, supra.* Whether the evidence was sufficient to establish that a structure is a "habitation" is now controlled by the *Jackson* standard. All of the evidence concerning this element must be examined in the light most favorable to the verdict and then we must determine whether any rational trier of fact could find that the premises was a "habitation" beyond a reasonable doubt.

The Penal Code defines a habitation as "a structure or vehicle that is adapted for the overnight accommodation of persons, and includes (A) each separately secured or occupied portion of the structure or vehicle; and (B) each structure appurtenant to or connected with the structure or vehicle." V.T.C.A. Penal Code 30.01(1). See also V.T.C.A. Penal Code 30.01(2) defining "building." [3]

One traditional rationale for the higher punishment associated with burglary of a habitation has been protection of the sanctity of the home. *Jones,* 532 S.W.2d at 600. Indeed, the common law offense of burglary could only be committed by breaking and entering a *dwelling house.* Lafave and Scott, *Criminal Law,* 708 (West 1972). Another possible reason for making burglary of a habitation a more serious crime is a desire to prevent violence against persons. The chance of violent confrontation may be increased when a burglar invades a habitation as opposed to some other structure. The current Penal Code implicitly recognizes this fact by including a burglarized structure's status as a habitation as one of three factors that can aggravate burglary to a first degree felony, the other two factors being injury to a person or carrying explosives or a deadly weapon. V.T.C.A., Penal Code 30.02(d).[4]

Guarding the sanctity of the home via burglary statutes is an ancient practice which has always been reflected in our State laws. Both the common law and the old Texas Penal Code recognized a special interest in securing places of residence against unwanted invasion. V.T.C.A., Penal Code, Arts. 1389, 1391 (repealed 1974). Burglary at common law could be committed *only* against a dwelling house. *Thommen v. State,* 505 S.W.2d 900, 901 (Tex.Cr. App.1974), *Lafave and Scott* at 711. This was defined as a place of human habitation, with occupancy rather than ownership determinative. There was no requirement that the residents actually be present when the offense was committed; whether the occupants were away for a short or extended time was immaterial to the structure's classification as a "dwelling house". *Lafave and Scott* at 711. An unfinished house could not qualify even though people slept therein, but a business could if regularly slept in at night. *Id.* at 712. Build-

---

**3.** This provision reads: "Building" means any enclosed structure intended for use or occupation as a habitation or for some purpose of trade, manufacture, ornament, or use.

**4.** (d) An offense under this section is a felony of the first degree if:
(1) the premises are a habitation; or

(2) any party to the offense is armed with explosives or a deadly weapon
(3) any party to the offense injures or attempts to injure anyone in effecting entry or while in the building or in immediate flight from the building.

ings which were not residences did not qualify unless they were attached to residences or qualified via spatial proximity as part of the habitation's "curtilage." *Id.*

Texas has defined the offense more broadly than the common law since the nineteenth century. *Thommen* 505 S.W.2d at 902. Even so, the special protection afforded to places of residence was retained in the old pre–1974 Penal Code via two different burglary offenses: "Burglary", which could be committed by entering a "house" and "Burglary of private residence at night." Articles 1389, 1391, Vernon's Annotated Penal Code, 1925. "House" was defined very broadly to mean "any building or structure erected for public or private use, whether the property of the United States, or this State, or of any public or private corporation or association, or of any individual, and of whatever material it may be constructed." V.A.T.S., Penal Code, Art. 1395 (repealed 1974). "Private residence", on the other hand, was defined relatively narrowly: "any building or room occupied and actually used at the time of the offense by any person as a place of residence." V.A.T.S., Penal Code, Art. 1391 (repealed 1974). Private residence carried a penalty of any term "not less than five years" confinement, but burglary of a house carried a penalty of only two to twelve years. V.A.T.S., Penal Code, Arts. 1391, 1397 (repealed 1974).

The current burglary statute, enacted in 1973, not only retained the extra sanction for burglary of a place of residence, but actually broadened the category of structures which fall into the residential classification. *Jones, supra* at 600.

Chief Justice Nye, commenting in his concurring opinion to *Chandler v. State*, made a similar assessment of the reasons for the habitation/building distinction, but he questioned the law's effectiveness in carrying out its purposes. He writes:

> The rationale for providing an increased penalty for burglary of a habitation is to safeguard one's home-to pro-

tect against intrusion into those places where the threat to people is most alarming. There is a special danger associated with an intruder in a home-the danger that the intruder will harm the occupants or that the occupants will react violently to the trespass into their personal haven. The increased penalty is to further the intent of society to ensure that burglars stay out of inhabited homes.

*Chandler v. State*, 743 S.W.2d 736, 744 (Tex.App–Corpus Christi 1987). He then goes on to say:

> It is difficult to perceive how these goals can be attained with the current state of the law. How can the law deter a criminal from entering a private residence when the criminal will not know, until after he enters the structure, whether it is a habitation or a building? ... A subjective test which is hypertechnical like the one set forth by the Court of Criminal Appeals seems merely to muddle the issue.

*Id.*

In light of these concerns, we need to review the *Jones* interpretation of "habitation". *Jones* examined the legislative sources for the burglary statute and concluded that "habitation" meant a structure or vehicle that "at the time of the alleged offense (was) actually 'adapted for the overnight accommodation of persons' or at least at some prior time used for the overnight accommodation of persons and still 'adapted for the overnight accommodation of persons.'" *Jones*, 532 S.W.2d at 600. This definition is confusing and does not serve to clarify the Penal Code's definition of "habitation" which is supplied to juries. This definition has meant in subsequent cases that a habitation is a structure which is either used as a residence at the time of the burglary or has been used as a place of residence in the past and is, at the time of the burglary, in such a shape that it could comfortably accommodate overnight guests because of the presence of utilities and furniture.[5]

---

5. This court addressed the distinction between habitation and building three times in the seventies, and five Courts of Appeals' decisions, besides this case, have since applied our earlier standard in cases where the appellant has been convicted for burglary of a habitation and tried

In light of the burglary statute's history and purposes, we now undertake to set forth new guidance concerning the meaning of "habitation" in the current burglary statutes.

 As mentioned, *Jones* stands for the proposition that a habitation "must at the time of the alleged offense have been actually 'adapted for the overnight accommodation of persons' or- at least at some prior time used for the overnight accommodation of persons and still 'adapted for the overnight accommodation of persons.'" *Jones* at 600. There we noted that the word "adapted" can mean "capable of use" or "made suitable." *Id.* We rejected the former interpretation as too broad; every pickup truck which could have bedrolls spread across the back could be considered a habitation under such a definition. *Id.* As a result the majority in *Jones* very narrowly construed the term "capable of use." What makes a structure "suitable" or "not suitable" for overnight accommodation is a complex, subjective factual question fit for a jury's determination. Their inquiry could be guided by reference to whether someone was using the structure or vehicle as a residence at the time of the offense; whether the structure or vehicle contained bedding, furniture, utilities, or other belongings common to a residential structure; and whether the structure is of such a character that it was probably intended to accommodate persons overnight (e.g. house, apartment, condominium, sleeping car, mobile home, house trailer). All of these factors are relevant; none are essential or necessarily dispositive.

 The determination whether a burglarized place is a "building" or "habitation" will be overturned on appeal only if the appellant can show that no reasonable trier of fact could have found the place to

---

to claim that the evidence was insufficient to prove "habitation."

In *Jones*, a new house which a buyer had contracted to purchase was held not within the definition of habitation. No one had yet lived in the house, it contained no furniture and no refrigerator, and it may not have had electricity, although it did have a water connection.

In *Hargett v. State*, 534 S.W.2d 909 (Tex.Cr.App. 1976), a furnished rent house which had been rented in the past and was leased now but whose tenant had not yet moved in was held to be a habitation.

*Moss v. State*, 574 S.W.2d 542 (Tex.Cr.App.1978), presented a similar fact pattern to the case at bar. The house had been rented in the past, but had been vacant for two months. There were no water connections, no light bulbs, no stoves or heaters, and no electricity, although the owner believed there was supposed to be electricity. The house was being used to store property belonging to a relative of the owner. The evidence was held insufficient to establish that this structure was a habitation.

*Trotter v. State*, 623 S.W.2d 504 (Tex.App.-Ft. Worth 1981, no pet.), involved a mobile home containing furniture and household items. The utilities were available, but the sewer line was disconnected. The Court of Appeals held this to be a habitation although no one lived in the mobile home at the time of the offense. The home had been previously occupied. This case does not seem consistent with *Moss, supra.*

In *Lewis v. State*, 631 S.W.2d 813 (Tex.App.-Ft. Worth 1982, no pet.), the premises were a large one-bedroom apartment. Solely on the basis that the stolen property included household items like a portable radio, a television set, a microwave oven, and a jacket, the Court found sufficient evidence to prove the apartment a "habitation."

*Bazroux v. State*, 634 S.W.2d 919 (Tex.App.-Houston [1st Dist.], 1982, no pet.), involved the situation in which the structure is currently used as a residence, but the occupant is away for an extended period of time. (In this case, the occupant was on a 28–day trip out of the country). The court held that extended absences by occupants do not deprive residences of their habitational character.

In the case of *Chandler v. State*, 743 S.W.2d 736 (Tex.App.-Corpus Christi 1987, pet. pending), the court held that an unfurnished, unleased apartment could not be a "habitation" even though the apartment had a dishwasher, stove, refrigerator, disposal, lighting fixtures, hot water heater, and water and electric utilities. The court found it "inconceivable" that a reasonable person would find an unfurnished apartment fit for overnight accommodation. *Chandler*, 743 S.W.2d at 739. As noted above, a concurrence in this case vehemently criticized the *Jones* approach to the question of "building" versus "habitation."

The muddled distinctions between the holdings in these eight decisions reflect Chief Justice Nye's criticism of the hypertechnical, subjective test of *Jones.*

This *Jones* construction has been confusing because it apparently uses two different meanings for the word "adapted" in the same sentence. It has also resulted in the problem of juries making findings of "habitation" under the statutory definition which findings must then be struck down by an appellate court under the different, more restrictive *Jones* standard.

have been a habitation under the criteria above. The majority in *Jones* erred by stepping into the jury box and assuming the role of substitute subjective factfinder.

This standard will take into account the deterrence function of the penal law as well as the Code's express objective "to prescribe penalties that are proportionate to the seriousness of offenses." V.T.C.A., Penal Code Sec. 1.02(1)(A), (3). Under this construction, the criminal will be punished according to the seriousness of the invasion into premises that he chooses to make, which seriousness corresponds to the nature of the premises as he perceives or reasonably should perceive them. This standard also attempts to clarify and explicate a common meaning of the word "adapted" from the statutory definition of "habitation", so that our judicial construction of "habitation" will be in harmony with the statutory definition rather than at odds with it.

Any language in *Jones* or other cases contrary to the habitation standard in this case is expressly overruled.

 In the case before us, the trial court correctly instructed the jury according to the Penal Code definitions of "habitation" and "building." The jury found appellant guilty of burglary of a habitation. The evidence adduced at trial established that the structure (1) was a house once lived in by the complainant, (2) is now rented from time to time, (3) has a living room and two bedrooms, (4) is wired for electricity and has water readily available, (5) had two window air conditioners fully installed, (6) was only about three hundred yards from the complainant's current residence (7) was located along the only driveway providing access to the complainant's residence, (8) was used to store some of the complainant's household items. Moreover, the owner of the house testified that the structure was adapted for the overnight accommodation of persons. From these facts, a reasonable trier of fact could have found the structure to have been "adapted for the overnight accommodation of persons" according to the standard announced in *Jackson* and *Butler, supra.*

The judgment of the Court of Appeals is affirmed.

CLINTON, TEAGUE, MILLER and DUNCAN, JJ., dissent and adhere to the views expressed in the opinion of the Court on original submission.