

# NUMBER 13-24-00292-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**ALFREDO BERMUDES JR. A/K/A**
**ALFREDO BERMUDES,**                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                  **Appellee.**

---

## ON APPEAL FROM THE 404TH DISTRICT COURT
## OF CAMERON COUNTY, TEXAS

---

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Fonseca**
**Memorandum Opinion by Justice West**

Appellant Alfredo Bermudes Jr. a/k/a Alfredo Bermudes was indicted for burglary of a habitation with intent to commit a felony other than theft (Count I), a first-degree felony, and evading arrest with a previous conviction (Count II), a state jail felony. *See* TEX. PENAL CODE ANN. §§ 30.02(a), (d), 38.04(a), (b)(1)(A). Appellant argues by two

issues that (1) there was insufficient evidence to support the jury's verdict as to Count I, and (2) the trial court committed reversible error during the punishment phase of trial by charging the jury before the introduction of punishment evidence. Because the jury could have found each element of the offense beyond a reasonable doubt from the evidence presented at trial, and appellant inadequately briefed his second issue, we affirm.

## I. BACKGROUND[1]

The indictment alleged that appellant, on or about April 20, 2023, intentionally and knowingly entered a habitation, without the effective consent of the owner Joanna Torres, and attempted to commit murder or aggravated assault with a deadly weapon.

At trial, Torres testified that on the date in question her family visited a house in Brownsville to decide if they were interested in renting it. Torres explained that they were living at her mother's house at the time, and her family was considering moving into their own home. The owner of the house, "Stephanie," agreed to let the family "check out the house," and if they were "interested, [they] would just start renting." When asked how many rooms the house had, Torres responded, "There w[ere] three rooms. One bathroom, the living room and the kitchen." Torres later clarified that the house had a living room and kitchen, and a wall separated those two rooms from "the three [other] rooms" and "the restroom." On cross examination, Torres testified that the family was not renting the house or living there at the time.

Torres, her common law husband Jose Luis Hernandez, and their sons Luis Guaderrama and Ethan Hernandez, stayed at the house "for a couple of hours," from "1:00 p.m. until . . . everything happened." After "it got late," they watched a man walk up

---

[1] Because appellant does not challenge the evidence as to Count II, we limit the background facts to those related to Count I.

2

to the house through the backyard, go "straight to the window" in the back of the house and start "screaming" and "threatening everybody." Torres stated that there was a camera recording the back of the house and footage from the camera could be watched from the living room.[2] She testified that the man then broke the back window, got "[h]alf of his body" through the window, and then began "swinging" around a kitchen knife and threatened to kill them for kidnapping his mother. Torres testified that she did not know appellant, but she recognized him from her mother's neighborhood, and he had a "nickname." Her husband and oldest son tried to calm him down, but "he just kept on . . . trying to get in" and continued to threaten to kill them. Torres then called 911. Once the police arrived, she and her youngest son ran out to meet the police car. They told the responding officer that the assailant was in the back of the house, and appellant was arrested shortly thereafter.

Hernandez, Luis, and Ethan provided testimony that was generally consistent with Torres's testimony. Some testimony conflicted as to how long the family was at the house. Hernandez testified that they were at the home for "14, 15, 16 hours" before appellant arrived, while Luis testified that the family was at the home for seven or eight hours.

The jury returned a guilty verdict on both counts. At punishment, the trial court read the charge to the jury before the introduction of punishment evidence by either party. Appellant's trial counsel did not object to the reading of the charge.

The jury assessed punishment at seventeen years' imprisonment as to Count I and two years' imprisonment as to Count II. The trial court sentenced appellant accordingly and ordered the sentences to run concurrently. This appeal ensued.

---

[2] No video from the camera system was admitted as evidence.

## II.    SUFFICIENCY OF THE EVIDENCE

Appellant argues that there was insufficient evidence to support his conviction on Count I.[3]

## A.    Standard of Review and Applicable Law

To satisfy constitutional due process requirements, a criminal conviction must be supported by sufficient evidence. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). "Evidence is sufficient to support a criminal conviction if a rational jury could find each essential element of the offense beyond a reasonable doubt." *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In a legal sufficiency review, "we consider the evidence in the light most favorable to the verdict" and determine whether, based on the evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Edward v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App. 2021) (citing *Jackson*, 443 U.S. at 319). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* (quoting *Jackson*, 443 U.S. at 319). "Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt." *Delagarza v. State*, 635 S.W.3d 716, 723 (Tex. App.—Corpus Christi–

---

[3] Appellant argues that the evidence was both legally and factually insufficient to support his conviction for burglary of a habitation. However, we do not review criminal convictions under a separate factual sufficiency standard. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (holding that "the *Jackson v. Virginia*" legal sufficiency standard "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt"); *Adames v. State*, 353 S.W.3d 854, 856, 859 (Tex. Crim. App. 2011) (reaffirming *Brooks* in a unanimous opinion). Therefore, we decline to perform a factual sufficiency review and proceed under the legal sufficiency standard of review.

Edinburg 2021, pet. ref'd) (citing *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018)).

We measure the sufficiency of the evidence against "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict its theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.*

A hypothetically correct jury charge in this case would instruct the jury to find appellant guilty on Count I if he entered a habitation without the effective consent of Torres, the owner, and committed or attempted to commit murder or aggravated assault with a deadly weapon. *See* TEX. PENAL CODE ANN. § 30.02(a), (d); *Byrd v. State*, 336 S.W.3d 242, 252 (Tex. Crim. App. 2011) ("Although the *name* of the owner is not a substantive element of theft, the State is required to prove, beyond a reasonable doubt, that the person (or entity) alleged in the indictment as the owner is the same *person* (or entity)—regardless of the name—as shown by the evidence."). A person commits murder if they intentionally or knowingly cause the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1).[4] A person commits aggravated assault with a deadly weapon if they intentionally or knowingly threaten another with imminent bodily injury, and the person uses or exhibits a deadly weapon during the commission of the assault. *Id.* §§ 22.01(2), 22.02(a). A deadly weapon is "a firearm or anything manifestly designed, made, or

---

[4] "A person acts intentionally . . . when it is his conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE ANN. § 6.03(a). "A person acts knowingly . . . when he is aware of the nature of his conduct or that the circumstances exist[,]" or "when he is aware that his conduct is reasonably certain to cause the result." *Id.* § 6.03(b).

5

adapted for the purpose of inflicting death or serious bodily injury; or . . . anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17). A person attempts a criminal offense "if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." *Id.* § 15.01(a).

## B. Analysis

Appellant contends there is insufficient evidence that (1) the structure was a habitation, (2) the person named in the indictment was the owner, and (3) he attempted to commit murder or aggravated assault with a deadly weapon.

### i. Habitation

The Texas Penal Code defines habitation as "a structure or vehicle that is adapted for the overnight accommodation of persons." *Id.* § 30.01(1). The Texas Court of Criminal Appeals set out the following test to be used in determining whether a structure is a habitation:

> What makes a structure "suitable" or "not suitable" for overnight accommodation is a complex, subjective factual question fit for a jury's determination. Their inquiry could be guided by whether someone was using the structure or vehicle as a residence at the time of the offense; whether the structure or vehicle contained bedding, furniture, utilities, or other belongings common to a residential structure; and whether the structure is of such a character that it was probably intended to accommodate persons overnight (e.g. house, apartment, condominium, sleeping car, mobile home, house trailer). All of these factors are relevant; none are essential or necessarily dispositive.

*Blankenship v. State*, 780 S.W.2d 198, 209 (Tex. Crim. App. 1989). "The determination whether a burglarized place is a 'building' or 'habitation' will be overturned on appeal only if the appellant can show that no reasonable trier of fact could have found the place to have been a habitation under the criteria above." *Id.* at 209–10.

6

Appellant argues there is no evidence that the house in this case was "adapted for the overnight accommodations of persons" because the evidence, he contends, shows that the house had no bedrooms, furniture, or utilities, and "the premises were vacant." Despite appellant's contentions, there was some evidence that the house had bedrooms, furniture, utilities, and was otherwise adapted for the overnight accommodations of persons. *See id.* Torres testified that the house had "three rooms" apart from the "kitchen" and "living room," and Ethan testified that the home had about "five" bedrooms. Evidence also indicated that there was furniture in the house. *See id.* Torres stated that footage from the home's camera system could be viewed from "the couch [in] the living room," and other testimony clarified that the footage was playing on a TV in the living room. Ethan testified that the family ate dinner in the living room before appellant arrived. Admitted body camera footage from the responding officers shows a dining room table, chairs, and couches in the front room of the house and shows that lights were on throughout the house. *See id.* Regardless, it is undisputed that the structure in this case was a house, and Torres and her family intended to rent it and to possibly move in, which is evidence that the home was "adapted for the overnight accommodations of persons." *See id.*

Appellant also contends there was insufficient evidence that the structure was a habitation because the family was "only present for a couple of hours and were not planning to stay there overnight." Although Torres testified that the family was there for a "couple of hours," she also testified that they were there from 1 p.m. until it got dark, and other testimony indicated that the family was at the house for at least seven or eight hours. In any event, the State was not required to prove how long Torres or her family stayed at

the residence, or if they intended to stay at the residence overnight. *See id.* Instead, the State was required to prove only that the structure was "adapted for the overnight accommodations of persons." *See id.*

Viewing the evidence in the light most favorable to the verdict, we conclude the jury could have reasonably found that the house was adapted for overnight accommodation. *See Garcia v. State*, 667 S.W.3d 756, 762 (Tex. Crim. App. 2023) ("If the record supports conflicting inferences, the reviewing court must presume that the factfinder resolved the conflicts in favor of the prosecution and defer to the jury's factual determinations.") (cleaned up); *Blankenship*, 780 S.W.2d at 209–10; *Soliz v. State*, 785 S.W.2d 438, 440 (1990) (holding that there was sufficient evidence the residence was a habitation, even though no one had lived in the house full-time for a year, because evidence indicated that the house "was furnished not only with a bed at the time of the offense, but even with eating utensils, small appliances, and dish towels"). We overrule this sub-issue to appellant's first issue.

### ii. Ownership

Appellant next contends the evidence was insufficient to prove that "Torres was the owner of the property in question" because she did not own or lease the property, her family was "not living there," and they "did not intend to stay" at the property.

The Texas Penal Code defines "owner" as a person who has (1) title to the property, (2) possession of the property, *or (3) a greater right to possession of the property than the defendant*. TEX. PENAL CODE ANN. § 1.07(a)(35)(A) (emphasis added); *see also Morgan v. State*, 501 S.W.3d 84, 91 (Tex. Crim. App. 2016) ("The 'greater right of possession' doctrine applies to any prosecution for burglary." (citing *Alexander v. State*,

8

753 S.W.2d 390, 392 (Tex. Crim. App. 1988)). This definition is intended to be "'expansive' and 'give[s] ownership status to anyone with a rational connection to the property.'" *Ramirez v. State*, 429 S.W.3d 686, 688 (Tex. App.—San Antonio 2014, pet. ref'd) (quoting *Garza v. State*, 344 S.W.3d 409, 413 (Tex. Crim. App. 2011)). "Under the Penal Code's definition, multiple persons may be considered 'owners' of property, but only one need be alleged in the indictment." *Id.* (citing *Gregg v. State*, 881 S.W.2d 946, 951–52 (Tex. App.—Corpus Christi–Edinburg 1994, pet. ref'd)).

The code defines "possession" as "actual care, custody, control, or management." TEX. PENAL CODE ANN. § 1.07(a)(39). "Thus, under the Penal Code, any person who has a greater right to the actual care, custody, control, or management of the property than the defendant can be alleged as the 'owner.'" *Ramirez*, 429 S.W.3d at 688 (quoting *Alexander*, 753 S.W.2d at 392).

Here, Torres testified that the owner of the home gave her permission to visit the house and explicitly testified that the owner lent her the keys to the property. There was no evidence that appellant had title to the property, possession of the property, or permission to be on the property at the time of the offense. Thus, viewing the evidence in the light most favorable to the jury's verdict, we conclude a rational jury could have determined beyond a reasonable doubt that Torres had a greater right to possession of the property than appellant. *See* TEX. PENAL CODE ANN. §§ 1.07(a)(35)(A), 30.02(a); *Ramirez*, 429 S.W.3d at 690 (holding that complainant's "limited" right to actual care, custody, control, or management of the house was greater than appellant's, "who had no right at all"); *see also Nelson-Phillips v. State*, No. 12-16-00109-CR, 2017 WL 4801551, at *3 (Tex. App.—Tyler Oct. 25, 2017, no pet.) (mem. op., not designated for publication)

9

("A homeowner's guest . . . has a greater right to the actual care, custody, control, or management of the habitation than an uninvited assailant such as Appellant."). We overrule this second sub-issue to appellant's first issue.

### iii.    Attempted Murder or Aggravated Assault with a Deadly Weapon

Appellant lastly argues that there was insufficient evidence that he attempted to commit murder or aggravated assault with a deadly weapon because he "never fully entered the premises" and "never got close to the occupants of the premises." He contends that "[t]here was nothing 'imminent'" about his threats to Torres and her family. Appellant does not dispute the facts above or that the knife was a deadly weapon. *See* TEX. PENAL CODE ANN. § 1.07(a)(17). Instead, he argues that because he did not get inside the house, "it would be impossible for him to threaten . . . someone with 'imminent bodily injury' or even attempt to commit [a]ggravated [a]ssault."

Torres, her husband, and her sons all testified that appellant threatened to kill them, attempted to get inside the house by breaking a window and crawling through, swung a kitchen knife through the window, and continued to scream and threaten the family even after they tried to calm him down. Based on this testimony, the jury could have found beyond a reasonable doubt that appellant intentionally or knowingly intended to cause death or serious bodily injury or intended to threaten another with imminent bodily injury. *See id.* §§ 19.02(b)(1), 22.02(a). The jury could also have reasonably concluded that appellant's actions "amount[ed] to more than mere preparation" and "tend[ed] but fail[ed] to effect the commission of the offense intended." *See id.* § 15.01(a). We overrule this last sub-issue. Appellant's first issue is overruled in its entirety.

**III.     READING THE PUNISHMENT CHARGE PRIOR TO THE INTRODUCTION OF EVIDENCE**

By his second issue, appellant argues that the trial court committed reversible error by reading the charge on punishment prior to the introduction of punishment evidence. Appellant does not argue that the jury charge instructions are erroneous. Rather, he contends that reading the instructions prior to the introduction of evidence was error under article 37.07 of the Texas Code of Criminal Procedure "and justifies a new punishment hearing on both counts." *See* TEX. CODE CRIM. PROC. ANN. art. 37.07.

Article 37.07, § 3(a)(1) dictates the type of evidence that may be introduced during the punishment phase of trial. *See id.* § 3(a)(1). It states:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and . . . any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

*Id.* Section 3(b) then states: "*After the introduction of such evidence has been concluded*, and if the jury has the responsibility of assessing the punishment, the court shall give such additional written instructions as may be necessary . . . ." *Id.* art. 37.07, § 3(b) (emphasis added).

After reciting the statute, appellant's entire argument for this issue is as follows:

> In this case the court allowed the State's punishment evidence into evidence after he read the charge on punishment and instructed the jury on the punishment phases of the trial.
>
> This is an error and justifies a new punishment hearing on both counts.

11

> For example, before any evidence at punishment was introduced, the court instructed the jury on his failure to testify an[d] on the laws [o]f extraneous offenses.
>
> This procedure of instructing the jury before the introduction of evidence is confusing and can lead to a[n] improper sentencing of the [a]ppellant.

(Citation to the record omitted).

Even assuming appellant has shown error, he does not address whether or how the error caused him to suffer the requisite level of harm. Appellant cites no authority indicating that, by reading the punishment instructions before the introduction of such evidence, the trial court contributed to his punishment or affected his substantial rights. *See* Tex. R. App. P. 44.2(a) (providing that, upon finding constitutional error, we must reverse unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment), 44.2(b) (providing that all nonconstitutional errors that do "not affect substantial rights must be disregarded").[5] He also points to nothing in the record indicating that the jury failed to follow the trial court's instructions or that the jury was "confus[ed]" by the charge instructions. *See Taylor v. State*, 332 S.W.3d 483, 492 (Tex. Crim. App. 2011) ("[W]e presume that the jury understood and followed the court's charges absent evidence to the contrary."); *Wishert v. State*, 654 S.W.3d 317, 334 (Tex. App.—Eastland 2022, pet. ref'd) ("[I]t is presumed that a jury follows a trial court's instructions regarding the consideration of evidence.").

---

[5] The State concedes that it was error for the trial court to read the charge on punishment prior to the introduction of punishment evidence but argues that appellant was not harmed by the error. The State contends that the error in this case "is akin to a noncomplying jury instruction and should therefore be reviewed under the standard of review for unobjected-to jury charge error" and argues that appellant was not egregiously harmed. Appellant's appellate brief does not address whether this issue was preserved for appellate review, *see* Tex. R. App. P. 33.1(a)(2)(A), nor does he address what harm standard applies to this error. Because we conclude that appellant inadequately briefed this issue, we decline to address what standard of harm applies to this error.

An appellant's brief must concisely state all issues or points presented for the contentions made, including appropriate citations to authority and the record. TEX. R. APP. P. 38.1(i). "[A]n appellate court has no obligation to construct and compose an appellant's issues, facts, and arguments with appropriate citations to authorities and to the record." *Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017) (cleaned up) (quotation omitted). "Stated more succinctly, an appellate court is not required to make an appellant's arguments for her." *Id.* We conclude that this issue is inadequately briefed. *See* TEX. R. APP. P. 38.1(i); *Wolfe*, 509 S.W.3d at 343. We overrule appellant's second issue.

## IV. CONCLUSION

The trial court's judgment is affirmed.

JON WEST
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
18th day of September, 2025.

13