IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-172-CR





CYNTHIA LUANN DAVIS,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE


 



FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT



NO. CR-91-206, HONORABLE ROBERT T. PFEUFFER, JUDGE PRESIDING


 





PER CURIAM

 A three-paragraph indictment alleged that appellant, acting with Carl Davis,
Gregory Valadez, and Jerry Villarreal, started a fire with intent to destroy a habitation, knowing
that the habitation was within the limits of an incorporated city and insured against damage or
destruction, thereby recklessly endangering the life of another person. Tex. Penal Code Ann. §
28.02(a)(2)(A), (B), (F) (West Supp. 1993). The indictment further alleged that this offense
resulted in bodily injury to another person. Id. § 28.02(d). A jury, having been properly
instructed on the law of parties, found appellant guilty of all charges. The district court assessed
punishment at imprisonment for five years, probated.

 On the night of April 9, 1991, San Marcos fire fighters were called to a house fire
at 1010 Sycamore in that city. One of them, John Banning, suffered burns to his ears while
fighting the blaze. (1) Nancy Wilson, who lived in the house next door, testified that the fire began
with a large explosion and that flames were already "shooting out toward my house" when she
looked out the window. Wilson fled from her house, which was damaged as a result of the heat
from the neighboring fire. (2) The burned house was a rental unit owned by appellant and
unoccupied at the time of the fire. The house was insured for $42,900, with an additional $2000
of contents coverage.

 Because of the strong odor of gasoline present in the house, arson was immediately
suspected. Investigators later established that gasoline had been poured throughout the house. 
In fact, the carpet in one of the bedrooms was soaked with gasoline even after the fire. Witnesses
reported seeing a man, identified as Jerry Villarreal, running from the scene of the fire toward
a nearby fast-food restaurant. Although efforts to find Villarreal the day after the fire were
unsuccessful, investigators did learn that he had last been seen with Gregory Valadez. Valadez
and Carl Davis, appellant's husband, were both employed at Aquarena Springs. 

 Villarreal and Valadez were ultimately arrested, charged with arson, and convicted
on their pleas of no contest. Valadez testified for the State at appellant's trial pursuant to his plea
bargain agreement. Valadez testified that in early April 1991, Carl Davis offered him $1000 to
burn the house at 1010 Sycamore. Appellant was present when this offer was made and told
Valadez, "Burn it, burn it, burn it." Valadez accepted the offer and enlisted the aid of his friend
Jerry Villarreal. Using a key given to them by Davis, the two men entered the house on April
9 and poured eight gallons of gasoline throughout the premises. Valadez then drove to the fast-food restaurant to await Villarreal, who remained behind to ignite the fire. The day after the fire,
appellant and Davis met Valadez at his workplace. Appellant took $250 from her purse and gave
it to Davis, who in turn handed it to Valadez. On the afternoon of April 11, appellant and Davis
drove to Valadez's house and paid him an additional $500. (3)

 In her first point of error, appellant contends the evidence is insufficient to sustain
the conviction because the State did not adequately corroborate Valadez's testimony. A conviction
cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence
tending to connect the defendant with the offense, and the corroboration is not sufficient if it
merely shows the commission of the offense. Tex. Code Crim. Proc. Ann. art. 38.14 (West
1979). To test the sufficiency of the corroborating evidence, the reviewing court must eliminate
from consideration the accomplice's testimony and then examine the remaining evidence to
determine if it is incriminating. Edwards v. State, 427 S.W.2d 629, 632 (Tex. Crim. App. 1968);
Sonenschein v. State, 722 S.W.2d 450, 451 (Tex. App.--Austin 1986, pet. ref'd). 

 Evidence of motive is not alone sufficient to corroborate an accomplice witness,
but may be considered together with other evidence tending to connect the defendant to the crime. 
Paulus v. State, 633 S.W.2d 827, 846 (Tex. Crim. App. 1981) (dissenting opinion adopted on
motion for rehearing). The testimony in this cause reflects that on March 8, 1991, appellant
signed a contract to purchase a retail business in Wimberley. Appellant sought to borrow the
$30,000 purchase money from banks in Wimberley and San Marcos. Both banks refused to loan
appellant the money, the last refusal coming on April 2. Thus, the State demonstrated that
appellant needed a large sum of money and that her hope of borrowing the money was dashed just
one week before the fire.

 Emma Griffin, a claims adjuster for appellant's property insurer, testified that she
had an appointment to meet Carl Davis at 1010 Sycamore on the morning of April 9 to examine
water damage for which appellant had filed a claim. Davis failed to keep the appointment. After
Griffin returned to her office in Austin, she called appellant and suggested that the inspection take
place the following morning. Appellant insisted, however, that the inspection take place that
afternoon. The jury could infer from this that appellant had foreknowledge of the fire planned
for the night of April 9.

 San Marcos fire marshall Kenneth Bell was one of the persons who investigated this
offense. Bell testified that he questioned appellant and Carl Davis at the police department on the
afternoon of April 11. Bell described appellant's demeanor at this interview as "unusual." Bell
stated that appellant strongly disagreed when he told her that the fire had been deliberately set and
insisted that the fire was the result of a natural gas leak. Bell formed the impression that appellant
was not telling him everything she knew about the fire. The jury could consider this testimony
as a circumstance indicating guilty knowledge on the part of appellant.

 At the conclusion of his April 11 meeting with appellant and her husband, Bell told
them that Valadez was a suspect and asked them not to contact him. Bell and another investigator
then drove to Valadez's house, where they found appellant and Davis conversing with Valadez
in the front yard. Davis appeared to be startled by the arrival of the investigators, and he and
appellant left immediately. The presence of the defendant with the accomplice witness shortly
after the crime is not alone sufficient to corroborate the accomplice's testimony, but may be
sufficient when coupled with other circumstances. Paulus, 633 S.W.2d at 846. In this cause, the
circumstances demonstrate that the Davises drove to Valadez's house immediately after their
interview with Bell and despite Bell's request that they avoid Valadez, and suggest their guilty
involvement in the arson. 

 Seemingly insignificant circumstances sometimes afford evidence of guilt and
thereby corroborate accomplice testimony. Id. at 844. Kelly Brent, a claims supervisor for
appellant's insurer, interviewed appellant on April 15, after she filed a claim based on the fire. 
Knowing that the fire was caused by arson, Brent asked appellant how many keys there were to
the house and who had them. Appellant told Brent that there were four keys, all in her
possession. On April 19, another representative of the insurer, Scott Kemp, interviewed
appellant. Asked again about the keys, appellant stated that her husband had three keys to the
house and a fourth key was missing. Both Brent and Kemp testified that appellant seemed to
resent their investigation into the cause of the fire.

 Other innocuous facts become significant when considered in the context of the
April 9 arson. For example, the insurance policy on the house at 1010 Sycamore was due to
expire on April 15. Further, on April 10, the day after the fire, the Davises' Wimberley bank
account was debited for the cost of a $1000 money order purchased by appellant. The same day,
Carl Davis deposited a $1000 money order into the couple's San Marcos bank account, less $300
cash. The next day, Davis wrote a check on the Wimberley account for $500 cash. Finally,
appellant called the Wimberley bank on July 15 and asked that all requests for information
concerning the activity in her account be refused.

 To be sufficient, the corroborating evidence need only tend to connect the defendant
to the offense charged, and need not establish the guilt of the accused or even directly connect the
defendant to the crime. Cox v. State, 830 S.W.2d 609, 611 (Tex. Crim. App. 1992); Paulus, 633
S.W.2d at 844. We hold that the corroborating evidence in this cause does more than merely
raise a strong suspicion of appellant's guilt, but instead tends to connect appellant to the offense
in the manner required by article 38.14. See and compare Umstead v. State, 435 S.W.2d 156
(Tex. Crim. App. 1968) (arson; corroborating evidence insufficient) with Hill v. State, 644
S.W.2d 849 (Tex. App.--Amarillo 1982, no pet.) (arson; corroborating evidence sufficient). The
first point of error is overruled.

 In point of error two, appellant complains that the State failed to prove that the
house at 1010 Sycamore was a habitation as alleged in the indictment. A "habitation" is a
structure that is adapted for the overnight accommodation of persons. Tex. Penal Code Ann. §
28.01(1) (West 1989). Whether a structure is adapted for the overnight accommodation of
persons is a question for the trier of fact, and its determination that the premises was a habitation
may be overturned on appeal only if it is shown that no reasonable trier of fact could have reached
that conclusion from the evidence presented. Blankenship v. State, 780 S.W.2d 198, 209-10 (Tex.
Crim. App. 1989) (opinion on rehearing). 

 The structure at 1010 Sycamore was a three-bedroom, one-bath house with a living
room and kitchen. Appellant argues that the house was not adapted for the overnight
accommodation of persons at the time of the fire because it was unoccupied and unfurnished
except for a few kitchen appliances, both electric and gas utilities were disconnected and the
electric meter had been removed, and water damage had caused the floor to warp in one room. 
On the other hand, Nancy Griffin testified that she and her family lived in the house for two
years, moving next door only a few weeks before the fire. On the day of the fire, Carl Davis
showed the house to three prospective tenants who asked him before leaving when they could
move in. Photographs of the house taken before the fire reveal that the house was in need of
repair, but there are no obvious defects that would render the house unfit for habitation.

 The evidence supporting the verdict in this cause is much stronger than the evidence
deemed sufficient in Blankenship. We hold that the evidence supports the conclusion that the
burned structure was a habitation and overrule point of error two.

 In point of error three, appellant contends the district court erred by overruling her
motion for new trial because the jurors received other evidence after retiring to deliberate. (4) Tex.
R. App. P. 30(b)(7). To require a new trial on this ground, it must be shown that other evidence
was in fact received and that the evidence was detrimental to the defendant. Garza v. State, 630
S.W.2d 272, 274 (Tex. Crim. App. 1981). Appellant relies on testimony describing statements
allegedly made by juror Sue Franklin during deliberations. 

 Jurors Susan Petros and Emma Loftin testified they heard Franklin refer to
appellant as a manipulative, strong-willed person. Neither heard Franklin say that she knew
appellant, and Petros acknowledged that the statement may have been merely an impression
formed by Franklin from what she saw and heard at trial. Franklin testified that she does not
know appellant and denied making any statement concerning appellant's character. Assuming that
the statement was made, it was not shown to have been a statement of fact based on personal
knowledge. At most, the statement was shown to be an expression of opinion based on the juror's
impressions gathered during the trial. Such opinions are not evidence. 

 Juror Charles Turner testified that he heard Franklin say that appellant would have
to be a smart woman to own her own business. Assuming this remark was made, it was not
disparaging or detrimental to appellant. 

 Finally, Loftin and Franklin testified that Franklin said during deliberations that
the business appellant contracted to buy was located in a valuable riverfront building, and that the
owner of the property had recently died and the heirs were eager to sell the building. Appellant
argues that this statement was detrimental because it showed that she had to act quickly if she
hoped to buy the property. The flaw in this argument is that appellant had not contracted to
purchase the building. There is nothing in the record to indicate that the jurors were told or
believed that the sale of the building would adversely affect appellant's purchase of the retail
business located in it.

 Not every passing remark made during deliberations mandates the grant of a new
trial. Stephenson v. State, 571 S.W.2d 174, 176 (Tex. Crim. App. 1978); Goldstein v. State, 803
S.W.2d 777, 796 (Tex. App.--Dallas 1991, pet. ref'd). We conclude that the district court did not
abuse its discretion by denying the motion for new trial on this ground. The third point of error
is overruled.

 In her last point of error, appellant contends that her motion for new trial should
have been granted because the jurors considered her failure to testify in reaching their verdict. 
Tex. R. App. P. 30(b)(8). The relevant testimony reflects that several of the jurors considered
appellant's purchase of the $1000 money order one day after the fire to be a critical piece of
evidence against her. These jurors said that the absence of an exculpatory explanation for
appellant's action had been discussed during deliberations. Contrary to appellant's argument on
appeal, such an explanation would not necessarily have to come from appellant. Moreover, each
juror testified that he or she did not consider appellant's failure to testify as evidence of guilt, and
that his or her vote was based solely on the evidence presented at trial. No abuse of discretion
is shown. See Powell v. State, 502 S.W.2d 705, 711 (Tex. Crim. App. 1973). Point of error
four is overruled.

 The judgment of conviction is affirmed.


[Before Chief Justice Carroll, Justices Aboussie and Jones]

Affirmed

Filed: April 7, 1993

[Do Not Publish]
1.   This was the injury to another person alleged in the indictment.
2.   Wilson was the person alleged in the third paragraph of the indictment to have been
recklessly endangered by the fire.
3.   This paragraph is a brief summary of Valadez's testimony. All other facts recited in
this opinion are taken from the testimony of other, non-accomplice witnesses.
4.   Appellant's third and fourth points of error have an unusual procedural background. 
On the night after the jury was discharged, two jurors called the district judge at his home
to tell him that they were concerned about things that happened during deliberations. As a
consequence, the court, with the apparent agreement of both parties, sent letters to all the
jurors asking them to appear for a hearing. Appellant's motion for new trial was filed after
this hearing and based on the testimony adduced therein. In the absence of any objection by
the State, this Court will consider the hearing on the court's motion as the hearing on
appellant's motion for new trial.