MILLER V. STATE






COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-228-CR
 
ROBERT HARRY MILLER
                                                           APPELLANT
V.
THE STATE OF TEXAS
                                                                  
STATE
------------
FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY
------------
MEMORANDUM OPINION(1)
------------
Appellant Robert Harry Miller was indicted for aggravated sexual assault. A
jury acquitted him of that offense, but convicted him of the lesser-included
offense of sexual assault. The jury answered negatively the question of whether
Appellant used a deadly weapon in committing the offense. Upon finding one
enhancement allegation to be true, the jury assessed Appellant's punishment at
fifty years' confinement. In his sole point on appeal, Appellant contends the
evidence is legally insufficient to support the conviction.(2)
We affirm.
STANDARD OF REVIEW
In reviewing the legal sufficiency of the evidence to support a conviction,
we view all the evidence in the light most favorable to the verdict in order to
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443
U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Burden v. State, 55 S.W.3d
608, 612 (Tex. Crim. App. 2001). This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts. Jackson, 443 U.S. at 319, 99 S. Ct. at 2789. When
performing a legal sufficiency review, we may not sit as a thirteenth juror,
re-evaluating the weight and credibility of the evidence and, thus, substituting
our judgment for that of the fact finder. Dewberry v. State, 4 S.W.3d
735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).
In determining the legal sufficiency of the evidence to show Appellant's
intent, and faced with a record that supports conflicting inferences, we
"must presume -- even if it does not affirmatively appear in the record --
that the trier of fact resolved any such conflict in favor of the prosecution,
and must defer to that resolution." Matson v. State, 819 S.W.2d
839, 846 (Tex. Crim. App. 1991).
BACKGROUND
The complainant, D.W., testified that she was seventeen years old when she
and Appellant knew each other from having worked together at Pizza Hut for about
a month. D.W. then went to work for Whataburger on the 10 p.m. to 6 a.m. shift,
but she and Appellant remained friends. Although they had previously been out
together on one date, they had never had a sexual relationship. D.W. testified
that on March 26, 1988 she had just returned home from work at about 6-6:30 a.m.
and Appellant came over to her house, which he had done on other occasions.
After talking for awhile, Appellant began to talk about having a relationship
with D.W., but she responded that she wanted to remain just friends. Appellant
then insisted that D.W. was going to give him what he wanted, and after pulling
D.W. by the hair, he secured the front door with the chain and locked the
doorknob. He pulled D.W. into the kitchen and grabbed a two-pronged fork. He
told D.W. that if she didn't cooperate, it would cause her pain and she would
suffer. Appellant pressed the two-pronged fork to D.W.'s throat and told he was
going to get what he wanted. They struggled and the fork dropped onto the floor.
Appellant went back to the kitchen where he found a steak knife that he kept
pressed up against D.W.'s throat. D.W. stated she was in fear of death or
serious bodily injury and that Appellant might hurt or kill her. Appellant hit
D.W. a couple of times across the face with the back of his open hand and with
his fist. They struggled and ended up in the bedroom where D.W. was knocked to
the floor. Appellant tried to cut D.W.'s shirt off, and then pulled it off. He
managed to get his clothes off and got on top of D.W., covering D.W.'s mouth so
she couldn't make too much noise by screaming. Appellant then penetrated D.W.'s
female sexual organ with his penis, without her consent.
After the sexual assault, Appellant picked up D.W. and placed her in the
bathtub and told her he was sorry for what he had done and that he didn't mean
it. D.W. told Appellant she had to go to a meeting at work and she left.
Instead, she went to some friends' apartment a few blocks away; they called the
police.
Officer Fergus testified that when he arrived at the friends' apartment, D.W.
opened the door and was visibly upset. She had been crying and her face
"had been bruised up." D.W. had scratches and gouge marks on her neck
and looked like she had been in a fight.
While Officer Fergus was at the friends' apartment, Appellant arrived and D.W.
yelled to Officer Fergus to "keep him away from me." The officer asked
Appellant whether he "was responsible for this," to which Appellant
responded, "yes." Detective Van Duzee took D.W. to the emergency room
of Baylor Medical Center in Grapevine where Officer Wolf took photographs of
her. According to Officer Wolf, D.W. had abrasions and scratches around her neck
and throat area, and a bruise and an abrasion on the left portion of her back.
The following items were recovered from D.W.'s apartment by the police and
were introduced into evidence: a bent two-pronged fork, found in the kitchen; a
five-inch steak knife with a slightly bent blade, found in D.W.'s bedroom; and a
slightly ripped t-shirt found in D.W.'s bedroom.
Appellant testified that on the date of the alleged assault he was twenty-two
years old. He and D.W. had previously been on five or six dates and had engaged
in sexual relations once before.(3)  On
March 26, 1988, he got off work at Pizza Hut at about 1 a.m., went home to
change clothes, and about 4 a.m. he went over to D.W.'s apartment. They made
dinner or early breakfast, ate the meal, and had consensual sexual intercourse.
Appellant stated he never threatened D.W., either verbally or with a fork or
knife.
DISCUSSION
In order to convict Appellant of sexual assault, the State had the burden of
proving that Appellant intentionally or knowingly caused the penetration of
D.W.'s female sexual organ by inserting his penis, without D.W.'s consent, by
compelling D.W. to submit or participate by the use of physical force or
violence or by threatening to use force or violence against D.W., and that D.W.
believed that Appellant had the present ability to execute said threat. See
Tex. Penal Code Ann. § 22.011 (Vernon 2003).
The following constitutes the entire relevant portion of Appellant's argument
in his brief in support of his contention that the evidence is legally
insufficient to sustain Appellant's conviction for sexual assault:

         As occurs in most cases, the two
 parties intimately involved in this offense gave completely differing accounts
 of what happened on March 26, 1988.
         [D.W.'s] testimony established a
 sexual assault.
         [Appellant's] testimony
 established consensual sex.
         What factors militate in favor
 of the appellant's version of events?
         The jury did not believe [D.W.'s]
 rendition of the offense on a critical point. The jury obviously rejected [D.W.'s]
 statements regarding the use of a weapon. The rejection of the deadly weapon
 allegation calls into question the totality of [D.W.'s] credibility. In other
 words, the jury, at least in part, rejected coercive behavior as a factor in
 the offense.
         Therefore, based on Blankenship,
 no juror acting rationally, could have found beyond a reasonable doubt that
 the appellant committed the offense of sexual assault.[(4)]

 
In order to prove the offense of sexual assault, the State was not required
to prove that Appellant used or exhibited a deadly weapon. Rather, the State had
to prove beyond a reasonable doubt that Appellant compelled D.W. to submit or
participate by the use of physical force or violence or by threatening to
use force or violence against D.W., and that D.W. believed that Appellant
had the present ability to execute this threat. Therefore, the fact that the
jury determined Appellant did not use a deadly weapon is not a factor we
consider when reviewing the legal sufficiency of the evidence to support
Appellant's conviction for sexual assault.
Further, although Appellant contends that the jury's rejection of the deadly
weapon allegation calls into question the totality of D.W.'s credibility, the
jury, not this court, was the judge of D.W.'s credibility, and the jury
obviously believed her testimony that Appellant compelled her to submit to the
sexual assault by the use of physical force or violence or by threatening to use
force or violence against her, and that D.W. believed that Appellant had the
present ability to execute this threat.
CONCLUSION
Applying the appropriate standard of review, we find the evidence is legally
sufficient to support Appellant's conviction for sexual assault, and we overrule
his sole point on appeal. The judgment of the trial court is affirmed.
 
                                                           PER
CURIAM
 
PANEL F: HOLMAN, DAUPHINOT, and GARDNER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: June 26, 2003

1. See Tex. R. App. P. 47.4.
2. The trial court's judgment was signed on August 15,
1990. On April 3, 2002, the Texas Court of Criminal Appeals granted Appellant's
request for an out-of-time appeal. Appellant's attorney timely filed a notice of
appeal on May 7, 2002.
3. The State's rebuttal witness, Detective Van Duzee,
testified that during a conversation with Appellant after his arrest, Appellant
stated he had not ever had sex with D.W. before.
4. Blankenship v. State, 780 S.W.2d 198, 207
(Tex. Crim. App. 1989) (op. on reh'g) ("We are not to sit as a thirteenth
juror reweighing the evidence or deciding whether we believe the evidence
established the element in contention beyond a reasonable doubt; fact, acting
rationally, could have found the evidence sufficient to establish the element
beyond a reasonable doubt. We do not presume that a jury acted reasonably just
because they were properly instructed; we test the evidence to see if it is at
least conclusive enough for a reasonable factfinder to believe based on the
evidence that the element is established beyond a reasonable doubt.").