**Winston Laroy MORRIS, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–95–117–CR.**

Court of Appeals of Texas, Fort Worth.

Aug. 1, 1996.

Earl R. Waddell, III, Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney, Betty Marshall and Charles M. Mallin, Assistant Chiefs of the Appellant Section, Anne E. Swenson, Sandy Lawrence, Paul Bezney, Assistant Criminal District Attorneys, for Appellee.

Before BRIGHAM, MILLER and H. BRYAN POFF, Jr. (Assigned), JJ.

## OPINION

H. BRYAN POFF, Jr., Justice.

Appellant, Winston Laroy Morris, was found guilty after a trial before the court of

the offense of burglary of a coin-operated machine. The court assessed his punishment at ten months' confinement in the Tarrant County Jail. Appellant gave notice of appeal, and in a single point of error he contends that the evidence was insufficient to prove he burglarized a coin-operated machine. Appellant's point of error is well taken and it will be sustained. The judgment is reversed and remanded for an acquittal.

On Saturday, January 28, 1995, at about 9:00 a.m., Officer Kalefleisch of the Fort Worth Police Department and his partner were patrolling the downtown area of Fort Worth on their bicycles. While passing an Allright parking lot, Officer Kalefleisch saw a man standing very close in front of the parking lot payment box. During his three years patrolling the downtown area, Officer Kalefleisch became familiar with the self serve parking lots and the payment boxes located on the lots. The scene at the Allright parking lot caught his eye, for the man was not wearing an Allright uniform and the parking lot was almost vacant.

As the officers approached the man standing in front of the payment box, the man turned and walked briskly away from the officers. As the man turned away, Officer Kalefleisch recognized the appellant. Officer Kalefleisch had become acquainted with appellant and had arrested him in the downtown area in the past for minor offenses.

As appellant walked away, Officer Kalefleisch began to follow him. Officer Kalefleisch called appellant by name and attempted to stop him. Appellant eventually did stop. As the officer approached, appellant threw a pick tool to the ground. Appellant also had several crumpled dollar bills in his hand. Officer Kalefleisch concluded that appellant had used the pick tool to remove the crumpled dollar bills from the slots in the payment box at the Allright parking lot. He therefore arrested appellant.

■ When appellant filed his appeal, the accepted method for reviewing sufficiency of the evidence challenges was to view all the evidence in the light most favorable to the verdict in order to determine if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Blankenship v. State,* 780 S.W.2d 198, 206–07 (Tex.Crim.App.1988). Both the appellant and the State therefore addressed their briefs to the *Jackson* standard.

■ After appellant's case was submitted, the Texas Court of Criminal Appeals in *Clewis v. State,* 922 S.W.2d 126 (Tex.Crim.App. 1996), held that the *Jackson* standard was the appropriate standard for testing the legal sufficiency of the evidence, but it was not the appropriate standard for testing the factual sufficiency of the evidence. The *Clewis* court adopted the standard for the review of factual sufficiency set out in *Stone v. State,* 823 S.W.2d 375, 381 (Tex.App.—Austin 1992, pet. ref'd, untimely filed). The *Stone* standard assesses all the evidence impartially in order to determine if it was factually sufficient for a fact finder to have found the appellant guilty beyond a reasonable doubt. *Id.* at 381. The verdict is set aside only if it so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

The *Stone* court observed that the factual sufficiency review began with the presumption that the evidence supporting the verdict was legally sufficient under the *Jackson* test. *Id.* We cannot, however, make that presumption in appellant's case, for both appellant's and the State's briefs and arguments addressed both the legal and factual insufficiency of the evidence. We will, therefore, initially employ the *Jackson* test to review the legal sufficiency of the evidence.

Appellant does not challenge the probable cause for his detention, nor does he challenge the fact that he took the dollar bills from the payment box. Appellant does however, in his sole point of error challenge the State's allegation in the indictment that the payment box was a coin-operated machine. Appellant contends the evidence is insufficient to prove the payment box was a coin-operated machine as alleged in the indictment.

For assistance in better understanding the nature of the payment box, both the State and the defendant rely on the testimony of Mr. Carter, the manager of the Allright parking lot where the offense occurred. Mr.

Carter described for the court both the design and the purpose of the payment boxes.

A payment box was placed at a convenient exit on each lot to provide a place for patrons of the lot to deposit their parking fees. On the payment box were written instructions directing the patrons to place the required sum of money in the slot with the number that corresponded with the number of the space where they had parked their vehicle. The payment box thus provided a place for self-payment. The payment box also served as a check system for the lot operator, for he could compare the money in the slots with the cars in the lot, to determine that payment had been made for each vehicle parked.

As the payment boxes were designed to store money, they were made of steel. In the front of the payment box there were cut one hundred slots, each one and one-half inches long. Each slot was numbered to correspond to a numbered parking space on the lot. The back of the payment box was hinged so that it could be opened. There was a lock on the back panel. An electric lamp illuminated the instruction panel but there was no electricity provided to any other part of the payment box. The payment box did not dispense a ticket, nor did it contain a clock to indicate the time the money was deposited. Neither the payment box nor the individual slots contained a meter or a digital display.

Mr. Carter testified that the payment box was not battery operated, or spring loaded, or activated. The only moving part in the payment box was a lever. The lever, when activated, dropped all the money into one big container at the bottom of the box for collection purposes.

During cross-examination, Mr. Carter agreed with appellant's characterization of the slots as "a hundred little shoe boxes with a slot that you can put money in." Mr. Carter also agreed with appellant's description of the box as "nothing more than a little slot that you put money in." Mr. Carter also confirmed that the only method to check for payment on the lot was to open the back of the payment box and compare the money in the slots with the cars on the lot. It was the responsibility of him or his employees to make this check to insure that all patrons had paid. It was therefore necessary for the money to remain in its individual slot until the collection procedure was completed.

Based on this evidence, appellant contends that the payment box was not even a machine, much less a coin-operated machine. The State contends that "the plain meaning" of the term coin-operated machine is broad enough to include the Allright parking lot payment box. Both appellant and the State agree that the controlling statute in this case does not contain a definition of the terms "machine" or "coin-operated machine." TEX. PENAL CODE ANN. § 30.03(a) (Vernon 1994). Neither party has supplied the court with any Texas case authority for the terms, nor have we been able to find any such authority. When there is no statutory definition and no case law definition of a term, the term should be given its plain meaning. *Daniels v. State*, 754 S.W.2d 214, 219 (Tex. Crim.App.1988).

For authority for his definition of the term "machine," appellant adopts the Merriam and Webster Collegiate Dictionary definition of a machine:

> [A]n assemblage of parts that transmit forces, motion and energy one to another in a predetermined manner; (2) an instrument ... designed to transmit or modify the application of power, force, or motion ... [a] device for performing a task.

WEBSTER'S NEW COLLEGIATE DICTIONARY 713 (9th ed.1983).

Appellant contends that since the payment box contained no assemblage of parts it was not a machine. Appellant argues that the payment box also was not a machine for it did not transmit force, motion, or energy and it had no source of power. Appellant concludes the payment box performed no task and was merely a passive receptacle with 100 slots for the collection of money. Appellant concludes the payment box was a cash box or a coin collection receptacle. Appellant concedes that section 30.03(a) of the Texas Penal Code makes it an offense to burglarize not only a coin-operated machine but also to burglarize a coin collection receptacle.

(a) A person commits an offense if, without the effective consent of the owner, he breaks or enters into any coin-operated machine, coin collection machine, or other coin-operated or coin collection receptacle, contrivance, apparatus, or equipment used for....

TEX. PENAL CODE ANN. § 30.03(a) (Vernon 1994).

Appellant argues that the term coin-operated machine is not broad enough under any definition to necessarily include a coin collection receptacle.

Appellant notes in defense of his position that the original version of the burglary of a coin-operated machine statute did not include the terms coin collection receptacle or coin collection machine.[1] These terms were added in the 1987 amendment to the statute.[2] The terms were added for some reason. If "coin collection recepticle" means the same thing as "coin-operated machine," the statute would contain surplusage and would be redundant. There would have been no purpose in making the additions in 1987. We will not presume the Legislature did a "vain thing" by enacting surplusage. We presume the entire statute was intended to be effective. TEX. GOV'T CODE ANN. § 311.021(2) (Vernon 1988); *Hermosillo v. State*, 903 S.W.2d 60, 69 (Tex.App.—Fort Worth 1995, pet. ref'd).

The State challenges appellant's definition of machine as being too technical. The State advances from Webster's New Universal Unabridged Dictionary a definition of a machine as a "device" or "a structure ... of any kind." The State argues that its definition more closely meets the plain meaning of the word "machine." The State's broad definition of "machine" would mean that a person breaking into the "Poor Box" of a church could be convicted of breaking into a coin-operated machine. We find such a hypothetical to exist outside the realm of common

usage. TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1988).

We find that the appellant's definition is too technical and the State's is too simplistic. A more plain meaning and a popularly held definition would be that a machine is:

f(1): an assemblage of parts that are usu. solid bodies but include in some cases fluid bodies or electricity in conductors and that transmit forces, motion, and energy one to another in some predetermined manner and to some desired end (as for sewing a seam, printing a newspaper, hoisting a load, or maintaining an electric current).

WEBSTER's THIRD NEW INTERNATIONAL DICTIONARY 1353 (1981).

However, according to a strict definition contained in the same source book, a lever is a machine, for by its predetermined inter-motion a lever serves to transmit or modify the application of power, force, and motion so as to do some desired kind of work. In fact, the simple lever was one of man's earliest machines.

Viewing the evidence in the light most favorable to the verdict, we find that any rational trier of fact could have found the payment box to be a machine. This does not end our inquiry, however, for appellant was charged with and convicted of burglary of a coin-operated machine.

 Clearly, the payment box was designed to receive coins. Like a coin-operated machine, the payment box had a slot or a receptacle into which the coins were to be deposited. Thus, the payment box was a "coin collection machine" or a "coin collection receptacle"; but was it a coin-operated machine? The State argues that although the terms coin-operated machine and coin collection receptacle may not always be synonymous, that under the facts in this case the term coin-operated machine is broad enough to include a cash box or a coin collection receptacle. The State cites no authority for

---

1. Act of June 14, 1973, 63rd Leg., R.S., ch. 399, 1973 Tex. Gen. Laws 883, 927.

(a) A person commits an offense if, without the effective consent of the owner, he breaks or enters into any coin-operated machine or other coin-operated contrivance, apparatus, or equipment used for....

2. Act of June 14, 1973, 63rd Leg., R.S. ch. 399, 1973 Tex. Gen. Laws 883, *amended by* Act of May 6, 1987, 70th Leg., R.S., ch. 62, § 1, 1987 Tex. Gen. Laws 164, 164.

this expanded definition of the term coin-operated machine.

The term "coin-operated" is not defined in the statute. Neither the appellant nor the State contest the definition of the word coin; nor does the appellant contend the term is not broad enough to include the dollar bills he allegedly took from the payment box. There also is no disagreement over the term "operate." The appellant offers no definition of the term and the State offers two dictionary definitions of the term that we find adequately describe the plain meaning of the term operate. THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1268 (3rd ed.1992) defines operate as " [t]o perform a function; work." WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 1253 (2nd ed.1983) defines operate as "to act; to perform work; to be in action so as to produce an effect; to effect; . . . to cause."

Accepting this definition—that to operate is to effect change or to set in action or to produce an effect—we inquire whether or not the depositing of dollar bills into the slot caused the machine to perform a function; or whether the depositing of the dollar bills caused the machine to react or to produce an effect or a change.

We learn from Mr. Carter's testimony that the payment box has no moving parts except for the hinged back panel and the lever that drops the dollar bills from their individual slots into the collection area at the bottom of the payment box. Mr. Carter also explained that the payment box had no electrical or mechanical parts other than the lever and the light above the instruction panel. Thus, our search for the reaction, the effect, or the performance generated by the depositing of the coin, focuses on the lever.

If the depositing of the coin affected the lever, the machine would be coin-operated. If the depositing of the coin caused the machine to perform any task, such as dispensing a ticket, raising an entry gate or making a notation of the time of the deposit, it could be said that the machine was coin-operated. We cannot find, however, looking at the evidence in the light most favorable to the verdict, that any reaction, effect, or change took place as a result of the depositing of the coins into the slot.

The depositing of the coins into the slot had no interaction with the lever. There is no evidence that the lever was activated by the coins being placed in the slots. In fact, the evidence shows that the coins remained in the slots until an employee opened the back panel of the machine and insured himself that all persons who had parked on the lot had made the appropriate deposits. The employee then activated the lever clearing the slots and the coins fell to the bottom of the machine for collection. This reaction was caused by the employee, not by the depositing of the coins.

It is clear from the evidence that the coins, after being deposited in the slots, passively remained in the slots until they were collected by an employee of Allright parking lots. Thus, even viewed in the light most favorable to the verdict we cannot say that a reasonable trier of fact could have found beyond a reasonable doubt that the machine was coin-operated. The evidence is legally insufficient under the *Jackson* standard of review, for it failed to prove one of the essential elements of the offense beyond a reasonable doubt. We therefore, need not make a *Stone v. State* factual sufficiency review of the evidence.

Appellant's point of error is sustained and the judgment is reversed. The cause is remanded to the trial court for entry of a judgment of acquittal.