In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00016-CR


______________________________




JORGE QUINONEZ, JR. A/K/A JORGE QUINONEZ, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 372nd Judicial District Court


Tarrant County, Texas


Trial Court No. 1018698R




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 A Tarrant County jury convicted Jorge Quinonez, Jr. a/k/a Jorge Quinonez, of aggravated
assault using a deadly weapon. The trial court assessed punishment at fifty years' confinement. On
appeal, Quinonez challenges the legal sufficiency of the evidence to support the conviction. 

I. FACTUAL BACKGROUND

 Peter Thornfield is an architectural designer who has been working in the construction field
for many years. He testified that Quinonez worked for him as a day laborer helping with demolition. 
According to Thornfield, he and Quinonez got along with "no problem" and Quinonez was a good
worker. He even advanced money to Quinonez at times. 

 On August 4, 2005, Thornfield, sixty-eight years old at the time, picked up Quinonez to take
him to a job site. A total of three people were at this job site on that day: Thornfield, Quinonez, and
Preston Byerly, another employee. Late in the afternoon, Thornfield took Quinonez to look for
apartments. After an hour or two of looking for apartments, the two men returned to the job site
where Byerly was still working at a wood pile near the front of the house. The two men walked
around to the back of the house to check to see if the area was ready for subcontractors to begin their
work. After assigning a final task of the day to Quinonez, Thornfield left the back of the house and
walked toward the front of the house to get a drink of Gatorade from an ice chest. 

 Thornfield bent down to get the bottle of Gatorade from the ice chest and, as he stood back
up and began to remove the lid, he was struck behind his right ear. He immediately turned around
to see Quinonez standing behind him. He asked Quinonez what he had done and saw Quinonez drop
a hammer. Thornfield explained that, at the time of the attack, Byerly was still at the wood pile
approximately thirty feet away from Thornfield. (1) Quinonez dropped the hammer and moved away
from Thornfield quickly. Thornfield immediately took off in his car, holding his finger to his injury
to attempt to stop the severe blood loss. Fearing that he could not drive all the way to the hospital,
Thornfield drove to the police station about a mile away. 

 He testified that he reported the name and description of Quinonez as the person who had hit
him with the claw end of a hammer. An officer called an ambulance, and Thornfield was taken to
the hospital. Since the attending physicians were unable to stop the bleeding, doctors had to perform
surgery on Thornfield to access the arteries that had been severed by the blow.

 Officer Bruce Anderson testified he was working at the station when Thornfield arrived after
the injury. He testified that Thornfield did not tell him what had caused his injury but that
Thornfield did say Quinonez had hit him. He testified Thornfield told him there were only two men
present at the scene. He conceded that Thornfield had a distant gaze and did not seem alert,
concluding that shock had probably set in. 

 Detective Craig Bonnette testified that Thornfield clearly identified Quinonez as the
individual who struck him, but that Thornfield had been uncertain as to the object used but thought
Quinonez had used a hammer. Thornfield identified Quinonez in his written statement to police. 
Bonnette agreed Thornfield had consistently identified Quinonez as the individual who struck him. 

II. APPLICABLE LAW

 In his brief, Quinonez cites to one case only: Blankenship v. State, 780 S.W.2d 198, 207
(Tex. Crim. App. 1988) (op. on reh'g). In Blankenship, the Texas Court of Criminal Appeals
reversed a conviction for burglary of a habitation when it concluded that the evidence was legally
insufficient to support the jury's finding that the structure at issue was a habitation. Blankenship
relies on and applies the principles set forth in Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). 
We, too, then will review the evidence here consistent with Jackson's legal sufficiency standards.

 A. Standard of Review

 In reviewing the evidence on legal sufficiency grounds, we view the evidence in the light
most favorable to the prosecution to determine whether any rational trier of fact could have found
the essential elements of the offense beyond a reasonable doubt. Id.; Johnson v. State, 23 S.W.3d
1, 7 (Tex. Crim. App. 2000). In our review, we defer to the jury's determinations as to weight and
credibility of the evidence. Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).

 B. Elements of Aggravated Assault

 A person commits assault if the person "intentionally, knowingly, or recklessly causes bodily
injury to another." See Tex. Penal Code Ann. § 22.01 (Vernon Supp. 2006). Assault becomes the
offense of aggravated assault when one of the following two circumstances is present: 1) the assault
causes serious bodily injury, or 2) the actor uses or exhibits a deadly weapon. See Tex. Penal Code
Ann. § 22.02 (Vernon Supp. 2006); Landry v. State, 227 S.W.3d 380 (Tex. App.--Texarkana 2007,
pet. filed).

III. ANALYSIS

 A. Legally Sufficient Evidence of the Elements of the Offense

 1. Identity

 At trial, Thornfield consistently and repeatedly identified Quinonez as the individual who
struck him. Anderson, one of the officers at the station to which Thornfield drove himself
immediately after the injury, testified Thornfield reported that Quinonez had struck him. 
Approximately four days later, when Thornfield gave his written statement and first talked with
Detective Bonnette, Thornfield also identified Quinonez as the individual who struck him. Based
on this evidence, a rational jury could have found that Quinonez was the individual who struck
Thornfield.

 2. Assault

 A person commits assault if he or she intentionally, knowingly, or recklessly causes bodily
injury to another. Tex. Penal Code Ann. § 22.01(a)(1). Here, the record shows that Thornfield
left Quinonez at the back of the house and went to the front and into the garage to an ice chest to get
a drink. There is no evidence that any demolition was being done in that particular location that
would call for Quinonez to follow Thornfield to the ice chest and start swinging a hammer above
and behind Thornfield. From the evidence that Quinonez was left to do work at the back of the
house, that Thornfield left that area to go to the front, and that Quinonez also came to the front where
he struck Thornfield from behind, the jury could infer that Quinonez intentionally or knowingly
struck Thornfield.

 There is also ample evidence that Thornfield suffered bodily injury as a result of being struck
behind his ear with the claw end of a hammer. Dr. Robert Sloane, Jr., testified that he performed
surgery on Thornfield after he and other physicians were unable to stop the bleeding. He described
Thornfield as "bleeding briskly." Dr. Sloane testified that Thornfield lost four to six units of blood
and that, considering the human body has only approximately eight units of blood, this injury was
"a serious bleeding episode" from which Thornfield could have bled to death. Dr. Sloane explained
that Thornfield had suffered "an incision or a laceration through the muscle" causing multiple areas
of arterial bleeding within the muscle that could not be stopped by simple suturing and that surgery
was required to stop the bleeding. Thornfield testified he still has numbness in that area as a result
of the injury. 

 3. Deadly Weapon

 At trial, Thornfield repeatedly and clearly testified Quinonez had a hammer in his hand when
Thornfield turned around. Defense counsel pointed out that, in Thornfield's statement made four
days after the event, Thornfield stated Quinonez had hit him with an object. Thornfield explained
that he did so because he was attempting to describe the event broadly and briefly so his statement
would fit on the one-page form he received from the police. Officer Anderson testified that, when
Thornfield arrived at the police station following the injury, he did not know what Quinonez had
used to strike him. Additionally, Detective Bonnette testified that, when he talked to Thornfield four
days later, Thornfield was not certain as to the object that was used, but that Thornfield did think it
was a hammer. 

 Dr. Sloane testified that Thornfield's linear wound was consistent with the claw end of a
hammer but agreed with defense counsel's suggestion that a knife could also have caused such an
injury. Dr. Sloane also testified he recalled Thornfield having indicated to hospital staff he had been
hit with a hammer. Thornfield testified consistently, and his medical records confirm that he did
report to hospital staff that he had been struck with a hammer. Detective Bonnette testified that a
hammer so used is capable of causing death or serious bodily injury. (2) 

 There is some evidence that, immediately and shortly after the serious injury to his head and
neck area, Thornfield may not have identified the object as a hammer. According to Thornfield's
testimony, he is very clear that Quinonez was holding a hammer when he turned around. 
Reconciliation of conflicting testimony is within the exclusive province of the jury. See Goodman
v. State, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001). Although there is evidence to the contrary,
the evidence that Quinonez used a hammer to strike Thornfield and that a hammer used in this
manner is capable of causing death or serious bodily injury is legally sufficient to enable the jury to
conclude beyond a reasonable doubt that Quinonez used a deadly weapon during the assault against
Thornfield. 

 B. Quinonez' Contentions

 We next address the specific contentions Quinonez presents in his brief to this Court. He
argues that the lackluster police investigation of the event, the missing testimony of the only other
witness, and the testimony from a defense witness that Thornfield had untruthful character "damaged
the State's case." We address those assertions in turn.

 1. Police Investigation

 We do not review the sufficiency of the police investigation; we review the evidence
presented at trial. To the extent that the sufficiency of the police investigation is reflected by the
sufficiency of the evidence, we have already concluded that the evidence is legally sufficient to
support the jury's verdict. (3)

 2. Absence of Byerly as Witness

 In reviewing the legal sufficiency of the evidence, we do not consider what evidence the State
could have or even should have presented. We review the evidence presented in a light most
favorable to the verdict to determine whether, from that evidence, a rational jury could have found
the elements of the charged offense beyond a reasonable doubt. Absence of a potential witness will
not render otherwise sufficient evidence insufficient.

 3. Evidence Regarding Thornfield's Untruthful Character

 Quinonez points to testimony from Thornfield's neighbor and former client, Linda
Hemingway, as support for his contention that the evidence was legally insufficient. Hemingway
testified that Thornfield had lied to her on many occasions and that he does not have a truthful
character. 

 We may not substantially intrude on the jury's role as sole judge of the weight and credibility
given to witness testimony. See Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Johnson,
23 S.W.3d at 7. The jury is free to accept or reject any or all of the evidence presented by either side.
See Saxton v. State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). Under our standard of review,
one witness' testimony concerning only the complainant's untruthful character will not, in itself,
render the evidence legally insufficient. We defer to the jury's determination as to credibility. See
Marshall, 210 S.W.3d at 625.

IV. CONCLUSION

 Viewing the evidence in a light most favorable to the verdict, we conclude that the evidence
is legally sufficient to support the jury's verdict. Thornfield's several statements to medical personnel
in the course of treatment for the head injury and his several statements during in-court testimony
that it was Quinonez who struck him with the hammer enabled the jury to find that it was Quinonez
who committed aggravated assault with a deadly weapon. 

 We overrule the sole point of error presented and, accordingly, affirm the trial court's
judgment.



 Jack Carter

 Justice


Date Submitted: August 17, 2007

Date Decided: September 12, 2007


Do Not Publish

1. At the time of trial, Byerly was at Fort Benning, Georgia, for basic training in the Army
National Guard. He did not testify at trial. 
2. A deadly weapon is "anything that in the manner of its use or intended use is capable of
causing death or serious bodily injury." See Tex. Penal Code Ann. § 1.07(a)(17)(B) (Vernon Supp.
2006); Adame v. State, 69 S.W.3d 581 (Tex. Crim. App. 2002).
3. Detective Bonnette explained his reasoning for deciding not to take from the scene the
hammer Thornfield suggested as the hammer with which Quinonez struck him. He explained that
he learned of the hammer days after the event and the scene had been left unsecured, causing him
to have concerns about the chain of custody.