Opinion filed November 10, 2011



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00024-CR

_____

**DANIEL SUBIA ORONA, Appellant**

**V.**

**STATE OF TEXAS, Appellee**

**On Appeal from the 358th District Court**

**Ector County, Texas**

**Trial Court Cause No. D-34,688**

### M E M O R A N D U M   O P I N I O N

The jury convicted Daniel Subia Orona of capital murder (murder during the course of a robbery) and assessed his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for life without parole. We affirm.

In two points, Appellant contends that the State failed to present sufficient evidence to support his conviction for capital murder because the evidence was legally and factually insufficient to prove beyond a reasonable doubt that appellant committed or attempted to commit a robbery in connection with the murder of Hector Medrano (the victim). The Court of Criminal Appeals in *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010), abandoned the factual sufficiency standard, and we need only consider the sufficiency of the evidence under the legal sufficiency standard.

The standard of review for an appellate court in evaluating the legal sufficiency of the evidence is to determine, after viewing all of the evidence in a light most favorable to the verdict, whether any rational finder of fact could have found the existence of the elements of the offense. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks*, 323 S.W.3d 893; *Gibbs v. State*, 819 S.W.2d 821, 834 (Tex. Crim. App. 1991). The appellate court's duty is not to sit as a thirteenth juror reweighing the evidence or deciding whether it believes the evidence established the elements in question beyond a reasonable doubt. *Gibbs*, 819 S.W.2d at 834; *Blankenship v. State*, 780 S.W.2d 198, 206–07 (Tex. Crim. App. 1988). When it is faced with facts that support conflicting inferences, the appellate court must presume that the finder of fact resolved the conflict in favor of the verdict, and any inconsistencies must be resolved in favor of the verdict. *Jackson v. Virginia*, 443 U.S. at 326.

The victim was shot in the chest and killed in the parking lot of the Spanish Oaks Apartment complex in Odessa. The victim's brother-in-law, Jose Morales, and the victim's brother, Alex Medrano, had been having a conversation near Morales's pickup when they saw two men exit a car that had passed through the parking lot and stopped in a nearby alley. The men were later identified as Appellant and Fernando Andujo. Israel Lujan, a fellow COS gang member, drove the vehicle.[1] Appellant and Andujo approached the men and pointed shotguns at them. One of them stated, "COS, cuz, give me all your money, don't move, give me all your [property]." Appellant had his gun trained on Morales. At this point, the victim was on his cell phone on the other side of Morales's pickup. As Alex reached for his wallet in order to respond to the demands of the gunmen, the victim walked into the confrontation and asked, "What is going on?" Appellant turned at this, answered "COS," and fired his shotgun at the victim. Meanwhile, Alex suffered an injury to his head as he tried to knock Andujo's gun away. Alex hit Andujo and ran across the street to call for help, but the victim was pronounced dead at the scene. An unspent shotgun shell found at the scene contained Appellant's DNA and was matched to the same type of shell that killed the victim.

Bianca Rodriguez testified that, on the night of the crime, she heard the discussion between Appellant and his accomplices about going over to the victim's apartment. She saw them take guns with them. Alex told police at the scene of the crime that the perpetrators had "said something about money." Also at the scene of the crime, Morales told Detective Martin

---

[1]"COS," short for "Cripping on Slobs," is the name of a Crip-affiliated gang to which Appellant and his accomplices belonged.

Baeza that the men had approached them with guns and "demanded money" from them. Sergeant Adam Barboza testified that, though it was not noted in the police report, the motive was determined to be robbery based on witness statements given by two women at the scene of the crime. Later that night at the hospital, Alex repeated to Detective Mike McKnight that the gunmen had stated, "Give me your . . . money." A few days later, Alex told Sergeant Barboza that the perpetrators had said, "[G]ive me your money." Both Morales and Alex testified at trial that the gunmen had asked for money. They also testified that they felt they were being robbed; Alex had even offered his wallet. Morales identified Appellant in court as one of the men that approached him and pointed a gun at him the night of the murder and also as the person who said, "COS. Give me all your money." He also identified Appellant as the person who shot the victim.

The evidence in this case is legally sufficient. A person commits capital murder if he intentionally commits murder while in the course of committing or attempting to commit robbery. TEX. PENAL CODE ANN. §§ 19.02(b)(1), 19.03(a)(2), 29.02 (West 2011 & Supp. 2011). A person commits the offense of robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another. *Id.* § 29.02. Whether the robbery is successful and property is actually obtained is irrelevant because "[i]n the course of committing theft" includes conduct that occurs in an attempt to commit theft. *Id*. § 29.01; *White v. State*, 671 S.W.2d 40, 41–43 (Tex. Crim. App. 1984). The State must prove every essential element of the offense listed in the indictment beyond a reasonable doubt. *Juarez v. State*, 198 S.W.3d 790, 793 (Tex. Crim. App. 2006). Appellant argues that the evidence was not sufficient to prove that it was his intent to commit robbery.

Appellant attacks the credibility of the statements made by Alex and Morales because, at different times, they each gave conflicting identifications of the parties involved in the crime. Both of these witnesses were consistent in their statements regarding what they heard—a demand for money. More importantly, it is the jury who is the sole judge of the credibility of the witnesses and of the weight to be given to their testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007), art. 38.04 (West 1979). It was the responsibility of the jury to resolve any conflicts in the testimony. *Jackson v. Virginia*, 443 U.S. at 319. As such, the jury was free to believe or disbelieve all or any part of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

3

Appellant contends that the motive for the shooting was gang-related and was not robbery but merely retaliation for an argument between the victim and Lujan's girlfriend. The jury heard testimony about both retaliation and robbery as possible motives for the crime. One does not necessarily preclude the other. However, if the jury saw these motivations as mutually exclusive, we have to presume it resolved that conflict in favor of the verdict. *Brooks*, 323 S.W.3d at 927. There was sufficient evidence for the jury to determine that the motive was robbery or that the motive was a mixture of robbery and retaliation. Either of these findings support a conviction for capital murder.

Appellant argues that there was no evidence that he personally made any demand for money, even though Morales testified that he did. The jury heard evidence that Appellant approached with his gun drawn. "Because it is difficult to prove what a defendant was thinking, intent of the accused is not ordinarily determined by direct proof; rather, it is inferred from circumstantial evidence." *Morris v. State*, 892 S.W.2d 205, 207 (Tex. App.—Texarkana 1994, no pet.). "Intent may be inferred from acts, words, or conduct of an accused, including the circumstances surrounding the acts in which the accused engages." *Id*. Regardless of who made the demand for money, appellant stood with his gun trained on Morales while the demand was made. Appellant does not dispute this. A jury is entitled to draw reasonable inferences. *Jackson v. Virginia*, 443 U.S. at 319. And it was reasonable for the jury to infer from his conduct that Appellant was committing or attempting to commit robbery. Considering the evidence in the light most favorable to the verdict, a rational trier of fact could have found the essential elements of capital murder beyond a reasonable doubt. We overrule both of Appellant's points of error.

The judgment of the trial court is affirmed.

ERIC KALENAK

November 10, 2011                                         JUSTICE

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.

4