Opinion filed November 10,
2011

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-10-00024-CR

                                                    __________

 

                                DANIEL SUBIA ORONA, Appellant

                                                             V.

                                      State of Texas, Appellee



 

                                   On
Appeal from the 358th District Court

                                                             Ector
County, Texas

                                                   Trial
Court Cause No. D-34,688

 



 

M E M O R A N D
U M   O P I N I O N

 

            The
jury convicted Daniel Subia Orona of capital murder (murder during the course
of a robbery) and assessed his punishment at confinement in the Institutional
Division of the Texas Department of Criminal Justice for life without parole.  We
affirm.

            In
two points, Appellant contends that the State
failed to present sufficient evidence to support his conviction for capital murder
because the evidence was legally and factually insufficient to prove beyond a
reasonable doubt that appellant committed or attempted to commit a robbery in
connection with the murder of Hector Medrano (the victim).  The Court of
Criminal Appeals in Brooks v. State, 323 S.W.3d 893, 912 (Tex. Crim.
App. 2010), abandoned the factual sufficiency standard, and we need only
consider the sufficiency of the evidence under the legal sufficiency standard.

            The
standard of review for an appellate court in evaluating the legal sufficiency
of the evidence is to determine, after viewing all of the evidence in a light
most favorable to the verdict,  whether any rational finder of fact could have
found the existence of the elements of the offense. Jackson v. Virginia,
443 U.S. 307, 319 (1979); Brooks, 323 S.W.3d 893; Gibbs v. State,
819 S.W.2d 821, 834 (Tex. Crim. App. 1991).  The appellate court’s duty is not
to sit as a thirteenth juror reweighing the evidence or deciding whether it
believes the evidence established the elements in question beyond a reasonable
doubt.  Gibbs, 819 S.W.2d at 834; Blankenship v. State, 780
S.W.2d 198, 206–07 (Tex. Crim. App. 1988).  When it is faced with facts that
support conflicting inferences, the appellate court must presume that the
finder of fact resolved the conflict in favor of the verdict, and any
inconsistencies must be resolved in favor of the verdict.  Jackson v.
Virginia, 443 U.S. at 326.

            The
victim was shot in the chest and killed in the parking lot of the Spanish Oaks
Apartment complex in Odessa.  The victim’s brother-in-law, Jose Morales, and the
victim’s brother, Alex Medrano, had been having a conversation near Morales’s
pickup when they saw two men exit a car that had passed through the parking lot
and stopped in a nearby alley.  The men were later identified as Appellant and
Fernando Andujo.  Israel Lujan, a fellow COS gang member, drove the vehicle.[1]
 Appellant and Andujo approached the men and pointed shotguns at them.  One of
them stated, “COS, cuz, give me all your money, don’t move, give me all your [property].” 
Appellant had his gun trained on Morales.  At this point, the victim was on his
cell phone on the other side of Morales’s pickup.  As Alex reached for his
wallet in order to respond to the demands of the gunmen, the victim walked into
the confrontation and asked, “What is going on?”  Appellant turned at this,
answered “COS,” and fired his shotgun at the victim. Meanwhile, Alex suffered
an injury to his head as he tried to knock Andujo’s gun away.  Alex hit Andujo
and ran across the street to call for help, but the victim was pronounced dead
at the scene.  An unspent shotgun shell found at the scene contained Appellant’s
DNA and was matched to the same type of shell that killed the victim.

            Bianca
Rodriguez testified that, on the night of the crime, she heard the discussion
between Appellant and his accomplices about going over to the victim’s
apartment.  She saw them take guns with them.  Alex told police at the scene of
the crime that the perpetrators had “said something about money.”  Also at the
scene of the crime, Morales told Detective Martin Baeza that the men had
approached them with guns and “demanded money” from them.  Sergeant Adam Barboza
testified that, though it was not noted in the police report, the motive was
determined to be robbery based on witness statements given by two women at the
scene of the crime.  Later that night at the hospital, Alex repeated to Detective
Mike McKnight that the gunmen had stated, “Give me your . . . money.”  A few
days later, Alex told Sergeant Barboza that the perpetrators had said, “[G]ive
me your money.”  Both Morales and Alex testified at trial that the gunmen had
asked for money.  They also testified that they felt they were being robbed;
Alex had even offered his wallet.  Morales identified Appellant in court as one
of the men that approached him and pointed a gun at him the night of the murder
and also as the person who said, “COS.  Give me all your money.”  He also
identified Appellant as the person who shot the victim.

            The
evidence in this case is legally sufficient.  A
person commits capital murder if he intentionally commits murder while in the
course of committing or attempting to commit robbery.  Tex. Penal Code Ann. §§ 19.02(b)(1), 19.03(a)(2), 29.02 (West
2011 & Supp. 2011). A person commits the offense of robbery if, in
the course of committing theft and with intent to obtain or maintain control of
the property, he intentionally, knowingly, or recklessly causes bodily injury
to another.  Id. § 29.02.  Whether the robbery is successful and
property is actually obtained is irrelevant because “[i]n the course of committing
theft” includes conduct that occurs in an attempt to commit theft.  Id. §
29.01; White v. State, 671 S.W.2d 40, 41–43 (Tex. Crim. App. 1984).  The
State must prove every essential element of the offense listed in the
indictment beyond a reasonable doubt.  Juarez v. State, 198 S.W.3d 790,
793 (Tex. Crim. App. 2006).  Appellant argues
that the evidence was not sufficient to prove that it was his intent to commit robbery.

            Appellant
attacks the credibility of the statements made by Alex and Morales because, at
different times, they each gave conflicting identifications of the parties
involved in the crime. Both of these witnesses were consistent in their
statements regarding what they heard—a demand for money.  More importantly, it
is the jury who is the sole judge of the credibility of the witnesses and of
the weight to be given to their testimony.  Tex.
Code Crim. Proc. Ann. art. 36.13 (West 2007), art. 38.04 (West
1979).  It was the responsibility of the jury to resolve any conflicts in the
testimony.  Jackson v. Virginia, 443 U.S. at 319.  As such, the jury was
free to believe or disbelieve all or any part of any witness’s testimony.  Sharp
v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

            Appellant
contends that the motive for the shooting was gang-related and was not  robbery
but merely retaliation for an argument between the victim and Lujan’s
girlfriend.  The jury heard testimony about both retaliation and robbery as
possible motives for the crime.  One does not necessarily preclude the other.  However,
if the jury saw these motivations as mutually exclusive, we have to presume it
resolved that conflict in favor of the verdict.  Brooks, 323 S.W.3d at
927.  There was sufficient evidence for the jury to determine that the motive
was robbery or that the motive was a mixture of robbery and retaliation.  Either
of these findings support a conviction for capital murder.

            Appellant
argues that there was no evidence that he personally made any demand for money,
even though Morales testified that he did.  The jury heard evidence that
Appellant approached with his gun drawn.  “Because it is difficult to prove
what a defendant was thinking, intent of the accused is not ordinarily
determined by direct proof; rather, it is inferred from circumstantial
evidence.”  Morris v. State, 892 S.W.2d 205, 207 (Tex. App.—Texarkana
1994, no pet.).  “Intent may be inferred from acts, words, or conduct of an
accused, including the circumstances surrounding the acts in which the accused
engages.”  Id.  Regardless of who made the demand for money, appellant
stood with his gun trained on Morales while the demand was made. Appellant does
not dispute this. A jury is entitled to draw reasonable inferences.  Jackson v.
Virginia, 443 U.S. at 319.  And it was reasonable for the jury to infer
from his conduct that Appellant was committing or attempting to commit robbery.
 Considering the evidence in the light most favorable to the verdict, a
rational trier of fact could have found the essential elements of capital
murder beyond a reasonable doubt.  We overrule both of Appellant’s points of
error.

            The
judgment of the trial court is affirmed.

 

 

ERIC KALENAK

November 10,
2011                                                                JUSTICE

Do not publish. 
See Tex. R. App. P.
47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J.,
and Kalenak, J.









[1]“COS,” short for “Cripping on Slobs,” is the name of a Crip-affiliated
gang to which Appellant and his accomplices belonged.