

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00335-CR

RAYMOND RAY SLAGLE                                          APPELLANT

V.

THE STATE OF TEXAS                                               STATE

----------

## FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY
## TRIAL COURT NO. 52,797-A

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In one issue, Appellant Raymond Ray Slagle appeals his convictions for aggravated sexual assault of a child and indecency with a child by contact. He argues that the evidence was insufficient. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Background

In December 2012, the State charged Slagle with three counts of aggravated sexual assault and two counts of indecency with a child by contact. He pled not guilty to all of the charges. The two complainants, Ann[2] and Betty, are cousins and also Slagle's granddaughters. They were both under the age of fourteen at the time of the offenses, and at the time of trial, Ann was sixteen years of age, and Betty was fifteen years of age.

Regarding Ann, the jury found Slagle guilty of committing three counts of aggravated sexual assault and one count of indecency with a child by contact, assessing punishment at life imprisonment for each of the aggravated assault counts and twenty years' confinement for the indecency with a child count.

Regarding Betty, the jury found Slagle guilty of committing one count of indecency with a child by contact and assessed punishment at twenty years' confinement.

In accordance with the jury's recommendation, the trial court sentenced Slagle to life imprisonment for the three counts of aggravated sexual assault and twenty years' confinement for the single count of indecency with a child by contact; all four counts were ordered to run concurrently. The trial court then sentenced Slagle to twenty years' confinement for the conviction for indecency

---

[2]We use pseudonyms in this opinion for each of the children mentioned.

with a child by contact committed against Betty and ordered it to commence upon the completion of his sentences for the four counts against Ann.

### III. Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences

3

in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

## IV.  Applicable Law

A person commits aggravated sexual assault of a child when the child is younger than fourteen and the person intentionally or knowingly causes the penetration of the sexual organ of the child by any means or causes the sexual organ of the child to contact the mouth of the actor.  Tex. Penal Code Ann. § 22.021(a)(1)(B)(i), (iii); (a)(2)(B) (West 2011 & Supp. 2014).

A person commits indecency with a child by contact when the child is younger than seventeen and the person, with intent to arouse or gratify the sexual desire of any person, touches the breast of a child or causes the child to touch any part of the genitals of a person.  *Id.* § 21.11(a)(1), (c) (West 2011).

## V.  Analysis

Slagle argues that the evidence was insufficient to find beyond a reasonable doubt that he committed the offenses charged because it consisted only of the complainants' conflicting and contradictory statements, which were unsupported by any independently corroborating evidence.

Both Ann and Betty testified at trial.  In addition to Ann's trial testimony, the jury also viewed her videotaped forensic interview, which occurred approximately one year prior to trial.

In her trial testimony, Ann recounted abuse that she said happened in her grandparents' home during numerous visits when she was between the ages of

4

five and eleven.[3]  Specifically Ann testified about particular instances of abuse that occurred in the following locations throughout her grandparents' house:

> **Computer room:**  Ann testified that she would often sit on Slagle's lap and watch him play on the computer.  According to Ann, on more than one occasion, Slagle slid his hand under her shirt and fondled her breast.[4]  On other occasions, Slagle would insert his fingers into the top of her pants and under her panties and then would touch her "vagina."[5]  (Ann explained that the touching of her breast and her vagina happened on many different occasions.)

> **Kitchen:**  Ann testified that on one occasion, Slagle followed her into the kitchen, began kissing her, and then picked her up and set her on top of the kitchen counter.  According to Ann, Slagle then removed her shorts and inserted two fingers inside of her vagina.  After that, he told Ann to stand up on the countertop, and after she complied, he continued to "finger" her, and then he placed his mouth on her vagina[6] and began "licking."[7]

---

[3]Because some of the incidents described during her trial testimony were not mentioned during her forensic interview, Slagle characterizes the portions of Ann's trial testimony that were not included in the forensic interview as inconsistent testimony.

[4]Ann testified that Slagle would always play a computer game called "Farmville."  In his brief, Slagle argues that "Farmville" had not yet been released during the time periods that Ann testified this abuse occurred.  We can find no evidence to support this argument in the record.

[5]*See Tyler v. State*, 950 S.W.2d 787, 789 & nn. 7–8 (Tex. App.— Fort Worth 1997, no pet.) (discussing correct terminology).

[6]Slagle claims that at trial Ann denied that Slagle's tongue penetrated her vagina, in contradiction to her statement during the forensic interview.

[7]In her forensic interview, Ann relates an incident at the computer when Slagle fondled her breast and the incident in the kitchen as a single occurrence, which began in the computer room and continued when Slagle followed her into the kitchen.  At trial, Ann testified to both instances of abuse but did not connect them together as part of a sequence of events.  Slagle contends that this is an inconsistency in the evidence.

**Back porch:** Ann testified that Slagle would often sit on the back porch to smoke and read and that she often sat on his lap when he did this. She testified that on one such occasion, Slagle placed his hand inside her pants, and then he took her hand, placed it on his penis, and told her to "take it out and play with it." Ann tried to do as she was told, but when she experienced trouble with the zipper of his pants, Slagle took his hand from her pants and removed his penis himself. Ann told the jury that she placed her hand on his penis, and then Slagle "motioned [her] hand the way that he wanted [her] to do it."

On another occasion while on the back porch, Slagle told Ann to "play" with his penis with her hand and then later directed her to put her mouth on it. She testified that after she placed her mouth on his penis, Slagle placed his hand on the back of her head and moved her head "in a motion." She testified that when she was finished, Slagle walked to the back door and ejaculated onto the rocks. Ann also told the jury about yet another incident when Slagle told her to "play" with his penis with her hands, and place her mouth on his penis, and then he ejaculated onto the rocks.

**Garage:** Ann testified about an incident that occurred after Slagle had installed a new crank in the garage. He said he wanted to show it to Ann, so she followed him into the garage. She testified that when they got inside, Slagle placed her on the counter and began kissing her, sticking his hand down her pants, first placing his hand on top her panties and then later underneath. Ann testified that, at first, his fingers were just on "top" but then they moved "inside."

Ann testified that another time, she went looking for Slagle for "something" and found him in the garage. Slagle began kissing Ann and then placed her hand on top of his penis. He then removed his penis from his pants and told Ann to "suck on it." Ann testified that she did as she was told.

**Living room:** Ann told the jury that one night, while she was watching television, Slagle told her to stand up. He then began kissing her, putting his hands in her pants, and rubbing on the surface of her vagina. Ann also described another instance similar to this one, except that on this occasion he told Ann to turn around. Ann testified that she did so, and then Slagle pulled down her shorts, bent her over, and began rubbing the head of his penis against her

6

vagina. Ann stated that his penis never went "inside" but just rubbed around it.

**Guest bedroom:** Ann testified that she lived with her grandparents for a few months when she was in the sixth grade. During this time, Slagle was responsible for waking her up and taking her to school. Ann testified that during the last week of her sixth grade year, she would wake up every day to Slagle kissing her, placing his fingers inside or outside of her vagina, or pulling down her shorts and underwear and then rubbing his penis between her legs on the surface of her vagina.

Additionally, Ann described several occasions throughout her testimony where Slagle would kiss her. According to Ann, it would be a "regular" kiss but then sometimes he would "stick his tongue in [her] mouth."

During trial, Ann was unable to give an exact timeline of the above-described events or the exact age she was at the time of each occurrence. Rather, she testified that the touching happened when she was between the ages of five and eleven.[8]

Betty's trial testimony was similar to Ann's with regard to events occurring in the computer room, but she did not testify regarding any other occurrences in other rooms in the house. Betty testified that she and Ann would sit on Slagle's lap and play games on the computer. She told the jury that, on multiple occasions, "he . . . [stuck] his hand up our shirts and. . . mess[ed] with our private

---

[8]Slagle contends that Ann contradicted herself at trial because she provided different ages and age ranges—on one occasion between five or six, on another occasion between eight or nine—during her forensic interview. He also generally complains that Ann was unable to remember her age when each of the incidents occurred or construct a sufficient timeline of events.

7

areas on the chest."[9]  She explained to the jury that this happened when she was very young, between the ages of five and nine and that she did not understand what was happening to her until she entered junior high, by which time she had stopped going over to her grandparents' house for unrelated reasons.

Both Slagle and his wife, Diane, testified.  Both swore to having a good marriage.  Slagle testified that he did not commit any of the charged behavior and that he had never touched his granddaughters inappropriately, and Diane testified that she had never seen her husband touch their grandchildren, or any child, inappropriately.

Diane stated that she and Slagle had had a healthy sexual relationship up until Slagle began taking blood pressure medication in 2008.  According to Diane, since 2008, Slagle had a problem getting an erection and even more trouble ejaculating.  Slagle confirmed that he had had trouble maintaining an erection; however, he testified that he had experienced this problem for a longer period of time–about ten or twelve years.

Diane testified that Slagle was a lifelong smoker and that she found it difficult to kiss him at times because of the taste.[10]  She also told the jury that

---

[9]However, when Ann was asked if she ever saw Slagle touch Betty inappropriately she replied, "Not to my knowledge."  Ann further testified that Slagle did not touch her inappropriately while Betty was around.  Slagle points this out as another inconsistency with regard to the girls' testimony.

[10]On cross-examination, defense counsel asked Ann if she "taste[ed] anything or notice[d] anything" when Slagle kissed her.  She responded that she did not.

8

Slagle had a very noticeable mole on top of the shaft of his penis.[11] At trial, a photograph of the mole was also introduced into evidence.

Diane informed the jury that Slagle had a bad back and was unable to lift heavy objects and that because of this he had to stop lifting his granddaughters when they were around eight to ten years old. Slagle also described his back problems, stating that he had not been able to lift his granddaughters since 2010 and therefore would not have been able to lift Ann and put her on the counter, as she claimed.[12] Additionally, both testified that Ann was a heavy-set child, which would have exacerbated the problem with lifting her onto a countertop.

The testimony of a child sexual abuse victim, standing alone, is sufficient to support an aggravated sexual assault conviction. Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1) (West 2005); *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978); *see also Bazanes v. State*, 310 S.W.3d 32, 40 (Tex. App.—Fort Worth 2010, pet. ref'd). The child's testimony is also sufficient to support a conviction for indecency with a child by contact. *Cantu v. State*, 366 S.W.3d 771, 775–76 (Tex. App.—Amarillo 2012, no pet.). Moreover, the State is not required to introduce any physical evidence to corroborate a child victim's

---

[11]When the forensic interviewer asked Ann if she saw any "marks, scars, [or] moles" on Slagle's penis, the only thing Ann said was pubic hair, but she did not know what color. On cross-examination, when asked if Slagle had any tattoos, body markings, or anything to distinguish him, Ann replied that she did not recall any.

[12]Ann turned twelve in 2010.

testimony. *Hiatt v. State*, 319 S.W.3d 115, 121 (Tex. App.—San Antonio 2010, pet. ref'd).

Slagle argues that because there were inconsistencies between Ann's trial testimony and her forensic interview, inconsistencies between Ann and Betty's testimony, and inconsistencies between Ann's testimony and the testimony of her grandparents, the evidence is insufficient to support a conviction.

The jury heard the inconsistencies in Ann's testimony and weighed Ann's testimony against that of other witnesses, including Betty, Diane, and Slagle himself. The jury also heard from Jennifer Edwards,[13] who explained the process of disclosure and some of the reasons why there may be differences between trial testimony and an earlier outcry. Edwards also explained to the jury why Ann could not accurately pinpoint dates of the assaults. As the factfinder, the jury could either accept or discount any part of the testimony of Edwards, as well as that of Ann and Betty. *See Dobbs*, 484 S.W.3d at 170.

"The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses," *id.*, and "reconciliation of conflicts and contradictions in the evidence is within the province of the jury." *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). Appellate courts cannot "sit as a thirteenth juror," but, rather, must determine whether the trier of fact, acting rationally, could have found the evidence sufficient to establish the elements beyond a

---

[13]Jennifer Edwards is a licensed clinical social worker and licensed sex offender treatment provider.

reasonable doubt. *Villalon v. State*, 791 S.W.2d 130, 132 (Tex. Crim. App. 1990) (quoting *Blankenship v. State*, 780 S.W.2d 198, 206–07 (Tex. Crim. App. 1988)).

The jury, as the factfinder, apparently believed the testimony of Ann and Betty over Slagle and Diane, and on appeal we must defer to such credibility determinations. Employing the standard that this court is required to use in evaluating the record, and viewing the evidence in this case in the light most favorable to the verdict, we conclude that a jury could have found the essential elements of aggravated sexual assault of a child and indecency with a child by contact. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. Therefore, we overrule Slagle's sole issue.

### VI. Conclusion

Having overruled Slagle's sole issue, we affirm the trial court's judgment.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 6, 2015

11